# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

GAFUR-ARSLANBEK                          )
AKHEMDOVICH RAKHIMOV                      )
                                         )
                    *Plaintiff,*         )
                                         )
          v.                             )     Civil Action No. 1:19-cv-2554 (JEB)
                                         )
ANDREA M. GACKI, *et al.*,               )
                                         )
                    *Defendants.*        )
                                         )
_____ )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................4

    I.       Statutory and Regulatory Background ....................................................4

    II.      Statement of Facts ...................................................................................5

           A.      Rakhimov's Designations by OFAC ...........................................5

           B.      Rakhimov's Delisting Petition ....................................................6

           C.      Rakhimov's Complaint .................................................................9

           D.      OFAC's Provision of the Administrative Record ......................9

           E.      Rakhimov's Amended Complaint ............................................ 12

LEGAL STANDARDS ...................................................................................................... 12

    A.      Summary Judgment Standard ............................................................ 12

    B.      Motion to Dismiss Standard ............................................................... 13

DISCUSSION .................................................................................................................... 14

    I.       Defendants' Designation of Rakhimov Constitutes Arbitrary and Capricious Agency Action in Violation of the Administrative Procedure Act. ...................... 14

    II.      Defendants Failed to Provide Rakhimov with Adequate Notice of the Reasons for His Designation Under E.O. 13581 and Thus Acted in Violation of His Due Process Rights Under the Fifth Amendment to the U.S. Constitution ................. 21

           A.      Defendants Violated Rakhimov's Due Process Rights to Notice and a Hearing by Failing to Provide Adequate Notice as to Their Decision to Designate Him Under E.O. 13581. .......................................... 21

           B.      Rakhimov Has Alleged Sufficient Contacts to the United States to Claim a Constitutional Right to Due Process. ....................................... 30

III.    Defendants Failed to Provide Rakhimov with Adequate Notice of the Reasons for His Designation Under E.O. 13581 in Violation of the Administrative Procedure Act. .......................................................................................................................... 32

CONCLUSION ............................................................................................................................ 35

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Aktieselskabet v. Fame Jeans*,
    525 F.3d 8 (D.C. Cir. 2008) ........................................................................... 13

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*,
    686 F.3d 965 (9th Cir. 2012)…………………………………………...22, 23, 26, 28

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ....................................................................................... 12

*Bell Atlantic Co. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................... 13

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
    419 U.S. 281 (1974) ....................................................................................... 15

*Bridges v. Wixon*,
    326 U.S. 135 (1945) ....................................................................................... 29

*Browning v. Clinton*,
    292 F.3d 235 (D.C. Cir. 2002) ....................................................................... 13

*Burlington Truck Lines, Inc. v. United States*,
    371 U.S. 156 (1962) ....................................................................................... 20

*Carter v. George Washington Univ.*,
    387 F.3d 872 (D.C. Cir. 2004) ....................................................................... 12

*Chemical Mfrs. Ass'n v. EPA*,
    28 F.3d 1259 (D.C. Cir. 1994) ....................................................................... 16

*Citizens to Preserve Overton Park v. Volpe*,
    401 U.S. 402 (1971) ....................................................................................... 14

*Columbia Gas Transmission Corp. v. F.E.R.C*,
    448 F.3d 382 (D.C. Cir. 2006) ....................................................................... 19

*Conservation Law Foundation v. Evans*,
    209 F. Supp. 2d 1 (D.D.C. 2001) ...................................................................................... 16

*Exxon Corp. v. Department of Energy*,
    91 F.R.D. 26 (N.D. Tex. 1981) ............................................................................... 15, 28

*Fares v. Smith*,
    249 F. Supp. 3d 115 (D.D.C. 2017) .................................................................. 21, 26, 27

*Fares v. Smith*,
    901 F.3d 315 (D.C. Cir. 2018) ................................................................................*passim*

*Herron v. Fannie Mae*,
    861 F.3d 160 (D.C. Cir. 2017) ...................................................................................... 13

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) .......................................................................................................... 19

*Holy Land Found. v. Ashcroft*,
    333 F.3d 156 (D.C. Cir. 2003) ................................................................................ 15, 24

*Joumaa v. Mnuchin*,
    Civil Action No. 17-2780 (TJK) (D.D.C. Apr. 10, 2019) ............................................. 24

*Kadi v. Geithner*,
    42 F. Supp. 3d 1 (D.D.C. 2012) ....................................................................... 13, 30, 31

*Kiareldeen v. Ashcroft*,
    273 F.3d 542 (3d Cir. 2001)................................................................................ 22, 25, 28

*King & Spalding LLP v. U.S. Dep't of Health and Human Servs.*,
    330 F. Supp. 3d 477 (D.D.C. 2018) .............................................................................. 12

*Kwong Hai Chew v. Colding*,
    344 U.S. 590 (1953)....................................................................................................... 29

*Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*,
    826 F.3d 492 (D.C. Cir. 2016) ...................................................................................... 12

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) .............................................................................................................. 21

*Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ........................................................................................... 14, 15, 20

*Namb v. Board of Governors of Federal Reserve System*,
    Civil Action Nos. 1:11-cv-00506 (BAH) (D.D.C. 2011) ................................................. 17

*Nat'l Council of Resistance of Iran v. U.S. Dep't of State*,
    251 F.3d 192 (D.C. Cir. 2001) ...................................................................... 21, 23, 29, 31

*Nat. Res. Def. Council, Inc. v. Hodel*,
    865 F.2d 288 (D.C. Cir. 1988) ......................................................................................... 16

*People's Mojahedin Org. v. U.S. Dep't of State*,
    613 F.3d 220 (D.C. Cir. 2010) .................................................................................. 26, 27

*Plyler v. Doe*,
    457 U.S. 202 (1982) .......................................................................................................... 29

*Roelofs v. Sec. of the Air Force*,
    628 F.2d 594 (D.C. Cir. 1980) ......................................................................................... 32

*Russian Volunteer Fleet v. United States*,
    282 U.S. 481 (1931) .......................................................................................................... 29

*Saratoga Development Corp. v. United States*,
    21 F.3d 445 (D.C. Cir. 1994) ........................................................................................... 16

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947) .......................................................................................................... 15

*Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*,
    823 F.2d 574 (D.C. Cir. 1987) ......................................................................................... 16

*Sierra Club v. Mainella*,
    459 F. Supp. 2d 76 (D.D.C. 2006) ................................................................................... 14

*Stainback v. Secretary of the Navy*,
    520 F. Supp. 2d 181 (D.D.C. 2007) ................................................................. 17

*Tourus Records v. DEA*,
    259 F.3d 731 (D.C. Cir. 2001) ................................................................. 32, 33

*United States v. Verdugo-Urquidez*,
    494 U.S. 259 (1990) ................................................................. 30, 31

*Williams-Jones v. LaHood*,
    656 F. Supp. 2d 63 (D.D.C. 2009) ................................................................. 13

*Williams v. Lew*,
    819 F.3d 466 (D.C. Cir. 2016) ................................................................. 31

*Wong Wing v. United States*,
    163 U.S. 228 (1896) ................................................................. 29

*Yick Wo v. Hopkins*,
    118 U.S. 356 (1886) ................................................................. 29

*Zevallos v. Obama*,
    10 F. Supp. 3d 111 (D.D.C. 2014) ................................................................. *passim*

## STATUTES

5 U.S.C. § 555 ................................................................. 33

5 U.S.C. § 706 ................................................................. 14

18 U.S.C. § 798 ................................................................. 29

50 U.S.C. § 1701 ................................................................. 4

50 U.S.C. § 1702 ................................................................. 4

## EXECUTIVE ORDERS

Executive Order 13581 ................................................................. *passim*

Executive Order 13863 ................................................................. 5

# REGULATIONS

31 C.F.R. § 501.603 ............................................................................. 31

31 C.F.R. § 501.807 ......................................................................*passim*

31 C.F.R. § 590.201 ........................................................................5, 6

# RULES

Fed. R. Civ. P. 12 .............................................................................. 13

Fed. R. Civ. P. 56 .............................................................................. 12

# OTHER MATERIALS

Press Center, *Treasury Targets the "Thieves-in-Law" Eurasian
        Transnational Criminal Organization*, Dec. 22, 2017,
        *available at* https://home.treasury.gov/news/press-releases/sm0244 ..........................6, 18

Press Release, *United States Sanctions Human Rights Abusers
        and Corrupt Actors Across the Globe*, December 21, 2017,
        available at https://home.treasury.gov/news/press-releases/sm0243 .................................2

BLACK'S LAW DICTIONARY (10th ed. 2014) ......................................................... 17, 18

MERRIAM-WEBSTER'S DICTIONARY OF LAW (1996) .................................................. 25

## INTRODUCTION

On February 23, 2012, Plaintiff Gafur-Arslanbek Akhemdovich Rakhimov ("Rakhimov") was designated by Defendant the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") under Executive Order ("E.O.") 13581. Defendants contend that "OFAC's decision was based on its conclusion—following an investigation that included review of open source and classified reporting—that Rakhimov acts for or on behalf of a transnational criminal organization known as the 'Brothers' Circle.'" Def.'s Mot. to Dismiss ("Def.'s Mot.") at 1, ECF No. 12. OFAC purports that it "amended Rakhimov's designation," over five years later on December 22, 2017, after determining that he provides material support or services to the "Thieves-in-Law," a different alleged transnational criminal organization that was also designated under E.O. 13581 on the same day. *Id.* Regardless of how OFAC characterizes it, however, the purported amendment was actually a re-designation of Rakhimov, and was undertaken based upon a new administrative record—a record at the crux of the dispute in this matter.

In response to OFAC's re-designation, Rakhimov sought rescission of his designation under E.O. 13581 and removal from the Specially Designated Nationals and Blocked Persons List ("SDN List") through the delisting procedures governing removal from the SDN List. In addition, he requested the administrative record relied upon by the agency for that designation so that he could understand to the fullest extent possible the factual basis for his designation in order to meaningfully respond to OFAC's allegations.

While he waited for disclosure of the administrative record, Rakhimov also submitted information and documentation to OFAC in support of his argument that he did not meet the legal criteria for designation under E.O. 13581. This included, for example, information that Rakhimov is neither involved in drug trafficking nor organized crime, that he had been falsely accused of

criminal activity as part of failed extortion attempts by Gulnara Karimova,[1] and that he was cleared of any accusations by several courts and international law enforcement agencies. Despite his pending request for the administrative record and OFAC's active solicitation of information from him, the agency did not disclose the record. In response to OFAC's failure to do so, Rakhimov filed the initial complaint in this matter. ECF No. 1. It was only after filing that lawsuit that Defendants finally disclosed to Rakhimov the administrative record underlying his designation.

The administrative record disclosed to Rakhimov is problematic for a number of reasons. First, it is heavily redacted and appears to obscure from Rakhimov a number of critical conclusions and findings OFAC made in determining that Rakhimov meets the criteria for designation under E.O. 13581. Notably, Defendants did not provide any unclassified summary of the redacted portions of the administrative record, nor did they undertake any alternative means to fully apprise Rakhimov of the reasons for his designation. Second, the information that is disclosed in the administrative record is of no or unclear relevance to OFAC's decision to designate Rakhimov under E.O. 13581. This is because the unredacted information relates primarily to the history and practices of the Thieves-in-Law organization without any mention of Rakhimov, and peddles in false news stories about purported criminal activities that are unconnected to the Thieves-in-Law. Third, and most importantly, nowhere in the disclosed administrative record is there anything but conclusory statements of Rakhimov's connection to dealings with the Thieves-in-Law.

Indeed, the only times that Rakhimov's name appears in the same sentence with the Thieves-in-Law are Defendants' allegations that "Rakhimov '[c]ollaborates with [Thieves-in-

---

[1] Karimova is the daughter of the former Uzbekistan leader, Islam Karimov, who was also sanctioned by Defendant OFAC for her involvement in expropriating businesses and administering extortion rackets. *See* Press Release, *United States Sanctions Human Rights Abusers and Corrupt Actors Across the Globe*, December 21, 2017, available at https://home.treasury.gov/news/press-releases/sm0243 (last accessed on February 3, 2020).

Law,]' including with respect to business matters," and that he "assisted Thieves-in-Law by providing warning of law enforcement issues, arranging meetings, and addressing other problems." Def.'s Mot. at 7, ECF No. 12. Moreover, while Defendants repeatedly accuse Rakhimov of being involved in the drug trade—which, in addition to being untrue, is also entirely unrelated to the basis of his designation—those allegations are based on outdated and unsubstantiated media reports which have already been denied by Rakhimov. *See* A.R. at 0528.

OFAC's allegations attempting to link Rakhimov to the Thieves-in-Law are conclusory on their face. Defendants' attempt to make up for this insufficiency by highlighting allegedly "corroborating" evidence. That evidence, however, does not rationally connect to OFAC's determination that Rakhimov has provided support or services to the Thieves-in-Law. Indeed, because Defendants present no evidence to demonstrate that Rakhimov has provided support or services to Thieves-in-Law at all, there simply is nothing to corroborate.[2] Moreover, there is nothing in the administrative record regarding the Thieves-in-Law history or practices or the allegations of criminal activity by Rakhimov that would prove or support their allegations of Rakhimov's purported collaboration with the Thieves-in-Law.

Further, Defendants concede that OFAC designated Rakhimov as a Specially Designated National and Blocked Person ("SDN"), "thereby blocking all of Rakhimov's property and interests in property in the United States or in the possession or control of a U.S. person." Def.'s Mot. at 1, ECF No. 12. Accordingly, Rakhimov must be afforded his rights under the Fifth Amendment of the U.S. Constitution, as well as under the Administrative Procedure Act ("APA") to be informed

---

[2] Defendants also state that "Rakhimov contends . . . that OFAC's denial decision is [] arbitrary and capricious." Def.'s Mot. at 1. There has not been, however, any denial or other decision to date—at least that Rakhimov is aware of—with respect to his delisting request.

of the reasons underlying his designation. Defendants, however, have violated those rights by failing to provide him adequate notice of the basis of his designation.

For these reasons, and those discussed below, the Court should grant summary judgment in favor of Rakhimov and deny Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

## BACKGROUND

### I.   STATUTORY AND REGULATORY BACKGROUND

#### A.   *International Emergency Economic Powers Act*

The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, is the statutory basis for most U.S. economic sanctions administered by Defendants, including those imposed under E.O. 13581 and the Transnational Criminal Organizations Sanctions Regulations, 31 C.F.R. Part 590. IEEPA authorizes the President "to deal with any unusual or extraordinary threat, which has its source in whole or in substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a). IEEPA provides the President the power to "regulate, . . . prevent or prohibit, . . . any importation or exportation of, or dealing in, . . . transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." 50 U.S.C. § 1702(a)(1)(B).

#### B.   *Executive Order 13581*

On July 24, 2011, the President issued E.O. 13581 in response to "the activities of significant transnational criminal organizations." Exec. Order 13581, Preamble, 76 FED. REG. 44757 (July 27, 2011). E.O. 13581 imposed blocking sanctions on persons identified in its Annex,

as well as any person determined by the Secretary of the Treasury to meet the criteria for designation outlined in section 1(a)(ii) of E.O. 13581. *Id*. at § 1(a)(i)-(ii). These sanctions block (or "freeze") all property subject to U.S. jurisdiction in which a person designated under E.O. 13581 has any interest, and U.S. persons are generally prohibited from engaging in any transactions with those designated persons. *Id*. at § 1(c).

C.   *Transnational Criminal Organizations Sanctions Regulations*

The Transnational Criminal Organizations Sanctions Regulations provide that all transactions prohibited pursuant to E.O. 13581, as amended by E.O. 13863, are also prohibited pursuant to those regulations. 31 C.F.R. § 590.201. Persons designated under E.O. 13581, as amended, are identified on OFAC's SDN List with the program tag "[TCO]." *Id*. at NOTE 1. Persons designated or blocked pursuant to E.O. 13581 and the regulations can seek administrative reconsideration of their designations pursuant to OFAC's delisting procedures in 31 C.F.R. § 501.807. *See id*. at NOTE 3.

## II.   STATEMENT OF FACTS

A.   *Rakhimov's Designations by OFAC*

On February 23, 2012, OFAC designated Rakhimov pursuant to E.O. 13581 for acting for or on behalf of the formerly designated Brothers' Circle, and his name was added to OFAC's SDN List with the "[TCO]" identifier. OFAC, however, re-designated Rakhimov on December 22, 2017, alleging that OFAC believes Rakhimov has provided support and services to the Thieves-in-Law, an organization that OFAC simultaneously designated under E.O. 13581. 82 Fed. Reg. 61,662. According to the press release announcing that designation, Defendants contend that "Rakhimov has collaborated with Thieves-in-Law on business, as well as assisted Thieves-in-Law by providing warning of law enforcement issues, arranging meetings, and addressing other

5

problems." *See* Press Center, *Treasury Targets the "Thieves-in-Law" Eurasian Transnational Criminal Organization*, Dec. 22, 2017, *available at* https://home.treasury.gov/news/press-releases/sm0244. Defendants further allege that he "has been described as" being involved with criminal activity. *Id.*

As a result of his designation, all of Rakhimov's property and interests in property subject to U.S. jurisdiction are blocked. Exec. Order 13581, § 1(a); 31 C.F.R. § 590.201. Moreover, persons determined to provide material assistance or financial, material, logistical, or technological support for, or goods or services in support of Rakhimov are themselves subject to blocking sanctions pursuant to E.O. 13581 and 31 C.F.R. § 590.201. Exec. Order 13581, § 1(a)(ii)(B); 31 C.F.R. § 590.201.

    B.  *Rakhimov's Delisting Petition*

     i.  Request for Delisting

On August 1, 2018, Rakhimov requested the rescission of his E.O. 13581 designation pursuant to 31 C.F.R. § 501.807. OFAC assigned that request Case ID TCO-14038 and opened a delisting matter to review the basis of Rakhimov's designation.

     ii.  Request for Administrative Record

Also, on August 1, 2018, but through a separate submission to OFAC, Rakhimov requested the administrative record relied upon by the agency for his designation to the fullest extent possible. This request was intended to allow Rakhimov to understand the factual basis for his designation and afford him a meaningful opportunity to respond to OFAC's allegations within the delisting process.

### iii.    Additional Communications

On September 20, 2018, Rakhimov submitted evidence and arguments to OFAC that he believed would demonstrate that any conceivable basis for the designation had been negated. That submission addressed the bases and allegations that could be discerned from OFAC's February 23, 2012 and December 22, 2017 press releases announcing Rakhimov's original designation and re-designation. Specifically, that submission provided evidence from foreign courts and law enforcement agencies that exonerated Rakhimov of any involvement in drug trafficking; noted that there is a different individual by the name of Gafur Rakhimov who has been found guilty of drug trafficking in Uzbekistan that is of no connection to the Plaintiff Rakhimov; and explained that Rakhimov was extorted by Gulnara Karimova and accordingly OFAC should disregard any information from the former Uzbekistan Ambassador to the United States, Bakhtiyar Gulyamov, who participated in Karimova's attempted extortion of Rakhimov.

Although OFAC did not acknowledge the September 20, 2018 submission, on September 25, 2018, OFAC assigned Rakhimov's request for the administrative record Case ID TCO-14050. At that time, OFAC stated that it would first process the administrative record request before processing the delisting request. OFAC's stated reason for doing so was to ensure that Rakhimov had a better understanding as to the basis of his designation and the information OFAC would be seeking from him in the administrative delisting process.

On October 4, 2018, Rakhimov requested a temporary stay of the administrative record request until OFAC could review his September 20, 2018 submission and issue a questionnaire seeking clarifying, corroborating, or other additional information with respect to its consideration of his delisting request. *See* 31 C.F.R. § 501.807(b). Rakhimov's request made it clear that the stay was intended to ensure the case could progress more expeditiously.

OFAC then issued Rakhimov a questionnaire on October 12, 2018, seeking information relevant to OFAC's reconsideration of his designation. Rakhimov's response to that questionnaire on January 10, 2019, in part requested disclosure of any information possessed by OFAC demonstrating the purported on-going relationships with the parties that OFAC identified in its questionnaire and that the agency believed demonstrated his alleged material support for the Thieves-in-Law. Rakhimov also sought the disclosure of an unclassified summary to the extent necessary for OFAC to disclose that information.

On February 13, 2019, Rakhimov again sought to obtain the administrative record underlying his designation by requesting that OFAC simultaneously process both his request for the administrative record and his delisting request. Am. Compl. ¶ 27, ECF No. 10.  In making that request, Rakhimov reiterated his concerns that he did not fully understand OFAC's underlying reasons and supporting evidence for his designation, and was thus being deprived a meaningful opportunity to respond to OFAC's designation. *Id*. Instead of responding to his request, however, OFAC instead issued Rakhimov a second questionnaire on April 17, 2019, for the purpose of further evaluating his delisting request. *Id*. at ¶ 28.

OFAC continued to seek information concerning Rakhimov's request for reconsideration even though it had not provided him with the administrative record underlying his designation, despite having initially said it wanted to avoid exactly that situation. *Id*. at ¶ 23, 29. Accordingly, on June 25, 2019, Rakhimov formally requested a temporary stay of his pending administrative delisting request before OFAC and requested that the agency immediately process and disclose the administrative record underlying his designation. *Id*. at ¶ 29. That submission reiterated the fact that without disclosure of the administrative record, Rakhimov was not being afforded adequate notice as to the basis of his designation, and therefore could not meaningfully respond to OFAC's

April 17, 2019 questionnaire. OFAC granted Rakhimov's stay request on July 11, 2019. *Id.* at ¶ 30.

### C. *Rakhimov's Initial Complaint*

Following nearly two further months without receipt of the administrative record from OFAC, and over a year from his initial request, Rakhimov filed the initial complaint in this matter challenging OFAC's failure to provide him with the record relied upon in support of his designation. ECF No. 1. On November 20, 2019, in response to that complaint, Defendants finally disclosed to Rakhimov the administrative record underlying his designation. Am. Compl. ¶ 32, ECF No. 10.

### D. *OFAC's Provision of the Administrative Record*

The administrative record that OFAC disclosed to Rakhimov is heavily redacted and contains a significant amount of information that appears irrelevant to OFAC's determination that he meets the criteria for designation under E.O. 13581. OFAC did not provide any unclassified summary of the redacted portions of the administrative record, nor has it provided any alternative means by which Rakhimov could be fully apprised of the reasons underlying his designation.

The disclosed portion of the administrative record contains an evidentiary memorandum that was separated into five distinct sections as follows: Section I. Introduction; Section II. Background – Thieves-in-Law; Section III. Individual Proposed for Designation; Section IV. Basis for Designation; and Section V. Conclusion. A.R. 0001-0017. Section I summarizes the legal authority of E.O. 13581 under which Rakhimov was designated, and states OFAC's legal determination that Rakhimov met that criteria for designation under E.O. 13581 by having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the Thieves-in-Law. A.R. 0001-0002. Section II provides a

summary of the Thieves-in-Law origins, characteristics, code of conduct, practices, conflicts, and evolution. A.R. 0002-0011. Section III provides biographical and personal identifying information for Rakhimov. A.R. 0011-0012. Section IV contains the legal conclusions, findings, and reasonings underlying OFAC's determination that Rakhimov met the criteria for designation under E.O. 13581. A.R. 0012-0017. Section V merely restates OFAC's determination that Rakhimov met the criteria for designation under E.O. 13581 by having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the Thieves-in-Law. A.R. 0017.

OFAC's first conclusion in Section IV of the evidentiary memorandum that "Gafur RAKHIMOV Collaborates with *Thieves*" is purportedly supported by nine paragraphs of findings—all of which are redacted or withheld from disclosure—as well as their corresponding footnotes and supporting exhibits. *See* A.R. at 0012-15. There is however no description—or even any mention—anywhere else in the disclosed evidentiary memorandum or exhibits of how Rakhimov allegedly collaborates with the Thieves-in-Law. Nor is there any mention of which Thieves-in-Law he allegedly collaborates with, nor whether any alleged collaboration is carried out by him with individual Thieves-in-Law independently or instead with the Thieves-in-Law as an organization. Furthermore, to the extent that OFAC alleges that Rakhimov's purported support or services are provided on an individualized—as opposed to an organizational—basis, there is no indication from the record whether Rakhimov provides support or services to such unidentified parties in their personal capacity or in their capacity as alleged Thieves-in-Law.

OFAC's additional conclusion in Section IV that "Gafur RAKHIMOV is Involved in Criminal Activities" is also followed by nine paragraphs of findings, four of which are unredacted and have been disclosed to Rakhimov. A.R. 0015-0017. The remaining five paragraphs of findings

and their corresponding footnotes and exhibits are redacted or withheld from disclosure. None of the four disclosed paragraphs of findings or their supporting exhibits and footnotes state that Rakhimov is a Thief-in-Law, nor that his alleged involvement in criminal activities described in those paragraphs—which he asserts is false—was perpetrated in furtherance of the activities of, or in collaboration with, the Thieves-in-Law. In fact, none of the disclosed exhibits supporting OFAC's conclusions—even those that reference criminal allegations—say that Rakhimov collaborates with or supports the Thieves-in-Law.

Altogether, Rakhimov's name only appears in seven of the disclosed unredacted exhibits out of the 89 in total—more precisely, he is referenced on only 17 disclosed pages out of 700 total pages. *See* A.R. at 0349-50, 0443-44, 0496, 0511, 0518-20, 0527-29, 0565, 0700, 0708, 0718, 0721. Two of those exhibits contain Defendants' own press releases and notices concerning Rakhimov. *See* A.R. at 0349-50, 0700, 0708, 0718, 0721. One of those exhibits is Rakhimov's biography from his own website. *See* A.R. at 0443-44. The other four exhibits are a book excerpt and articles that refer to Rakhimov but do not identify him as a supporter of, or service provider to, the Thieves-in-Law. *See* A.R. at 0496, 0511, 0518-20, 0527-29, 0565. There is no mention of Rakhimov in the background description of the Thieves-in-Law in Section II of the evidentiary memorandum, nor in the exhibits supporting it. Notably, nothing in the disclosed administrative record demonstrates that Rakhimov or his conduct reflects the characteristics, code of conduct, or practices of the Thieves-in-Law described therein.

In fact, other than OFAC's own conclusory statements, there is not a single mention of Rakhimov connecting him to any dealings with the Thieves-in-Law in the disclosed administrative record, including in the evidentiary memorandum and the exhibits supporting it.

### E.      *Rakhimov's Amended Complaint*

Following OFAC's disclosure of the redacted administrative record, Rakhimov filed an Amended Complaint challenging his designation by Defendants and the notice that he received of that action. Am. Compl., ECF No. 10. More specifically, the Amended Complaint challenges Defendants' failure to provide Rakhimov with adequate notice of the reasons for his designation in violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution and the APA. *Id.* It also challenges Defendants' designation of Rakhimov under E.O. 13581 as being arbitrary and capricious agency action in violation of the APA. *Id.*

Through the Amended Complaint, Rakhimov seeks a variety of declaratory and injunctive relief from this Court. This relief includes, *inter alia*, rescission of his designation and removal of his name from the SDN List; disclosure of a full and sufficiently detailed statement of the reasons as to OFAC's decision to designate him; as well as any other and further relief as the Court may deem proper. Am. Compl., Relief Requested, ECF No. 10.

### III.    LEGAL STANDARDS

### A.      *Summary Judgment Standard*

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is 'genuine' only if a reasonable fact-finder could find for the nonmoving party, and a fact is 'material' only if it is capable of affecting the outcome of the litigation." *King & Spalding LLP v. U.S. Dep't of Health and Human Servs.*, 330 F. Supp. 3d 477, 487 (D.D.C. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court may grant summary judgment if "when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council*

*on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016) (citing *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004)).

When a court reviews agency action under the APA, "[t]he entire case on review is a question of law, and only a question of law." *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015). In those cases, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Kadi v. Geithner*, 42 F. Supp. 3d 1, 9 (D.D.C. 2012).

### B.    Motion to Dismiss Standard

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). Courts "must treat the complaint's factual allegations—including mixed questions of law and facts—as true and draw all reasonable inferences therefrom in the plaintiff's favor" when resolving a FED. R. CIV. P. 12(b)(6) motion. *Williams-Jones v. LaHood*, 656 F. Supp. 2d 63, 67 (D.D.C. 2009). In order to survive a motion to dismiss, a complaint must state a facially plausible claim for relief. *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556 (2007). A court "must not make any judgment about the probability of the plaintiff's success, for a complaint may proceed even if it appears that a recovery is remote and unlikely." *Aktieselskabet v. Fame Jeans*, 525 F.3d 8, 17 (D.C. Cir. 2008).

## DISCUSSION

I. **DEFENDANTS' DESIGNATION OF RAKHIMOV CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

Defendants' designation of Rakhimov constitutes arbitrary and capricious agency action in violation of the APA, as Defendants' determination that Rakhimov has provided support and services to the Thieves-in-Law is not supported by the administrative record. Other than Defendants' conclusory statements, there is no mention anywhere in the disclosed evidentiary memorandum of how Rakhimov allegedly collaborates with the Thieves-in-Law, which Thieves-in-Law he allegedly collaborates with, nor whether any alleged collaboration is carried out with individual Thieves-in-Law independently or instead is with the Thieves-in-Law as an organization. In addition, the disclosed evidentiary memorandum and its supporting exhibits and footnotes do not state that Rakhimov is a Thief-in-Law, nor that his alleged involvement in criminal activities— which he asserts is false—was perpetrated in furtherance of the activities of, or in collaboration with, the Thieves-in-Law. For these reasons, the Court should award summary judgment for Rakhimov with respect to Count I of the Amended Complaint.

Courts reviewing agency action are required to set aside and hold unlawful agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). In reviewing agency action under the APA, a court must determine, as a matter of law, whether "the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006). This includes, for instance, determining whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Manufacturers Assoc.*

*of the United States, Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). Even though an agency's decision may be entitled to a "presumption of regularity," a court must conduct a "thorough, probing, in-depth review." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971).

When applying the "arbitrary and capricious" standard of review to an agency action, a court must determine whether, *inter alia*, "the agency relied on factors which Congress has not intended it to consider . . .[or] offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicles Mfrs. Assn.*, 463 U.S. at 43. In other words, courts are required to determine whether the agency "articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.*  But if there is no explanation for an agency's determination—other than a conclusory statement reiterating the agency's ultimate conclusion—then the Court is powerless to determine whether the explanation offered is "satisfactory" and is consistent with the evidence presented. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974) (reiterating that a court "may not supply a reasoned basis for the agency's action that the agency itself has not given"). Instead, a court must limit itself to judging the lawfulness of the agency's action solely on the basis of the explanation offered by the agency itself.  *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (stating the court "is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis"). This standard of review is no different in cases involving U.S. national security or foreign policy, including OFAC designation actions. *See, e.g., Holy Land Found. v. Ashcroft*, 333 F.3d 156, 162 (D.C. Cir. 2003) (finding that a court must "review the agency record to determine whether the agency's decision was supported by a rational basis").

Further, judicial review of agency action is based on the record upon which the administrative decision was based, and the administrative record consists of all documents and materials directly or indirectly considered by agency decision-makers, which "includes evidence contrary to the agency's position." *Exxon Corp. v. Department of Energy*, 91 F.R.D. 26, 32-33 (N.D. Tex. 1981). To facilitate this judicial review, agencies are required to provide "a contemporaneous explanation" of their actions. *Saratoga Development Corp. v. United States*, 21 F.3d 445, 456 (D.C. Cir. 1994).

The only text from Defendants' disclosures that purports to link Rakhimov to the Thieves-in-Law comes from their press release, not the disclosed evidentiary memorandum nor exhibits that Defendants relied upon to designate him. In seeking to establish that link, Defendants rely on their own conclusory statements that Rakhimov collaborated with and otherwise assisted Thieves-in-Law, and suggest that there is allegedly "corroborating" evidence that speaks to that determination. Def.'s Mot. at 14-15, ECF No. 12. An agency, however, cannot rely on conclusory allegations instead of substantiating its allegations. *Conservation Law Foundation v. Evans*, 209 F. Supp. 2d 1, 8 (D.D.C. 2001) ("[A]n agency may not rely on mere conclusory statements to explain its decision"); *See also, Chemical Mfrs. Ass'n v. EPA*, 28 F.3d 1259, 1266 (D.C. Cir. 1994) (unsupported and conclusory statement regarding scientific model "added nothing to the agency's defense of its thesis except perhaps the implication that it was committed to its position regardless of any facts to the contrary."); *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) ("it is enough to observe that where no factual support is provided for an essential element of the claimed privilege or shield, the label 'conclusory' is surely apt. The information provided by the DOJ—consisting almost entirely of each document's issue date, its author and intended recipient, and the briefest of references to its

subject matter—will not do."); *Nat. Res. Def. Council, Inc. v. Hodel*, 865 F.2d 288, 298 (D.C. Cir. 1988) ("Conclusory remarks [are] statements that do not equip a decisionmaker to make an informed decision about alternative courses of action or a court to review the Secretary's reasoning.") The common definition of the word "conclusory" is "[e]xpressing a factual inference without stating the underlying facts on which the inference is based <because the plaintiff's allegations lacked any supporting evidence, they were merely conclusory>." BLACK'S LAW DICTIONARY 381 (10th ed. 2014).

As noted above, the only information contained in the disclosed administrative record that purports to demonstrate that Rakhimov provides support or services to Thieves-in-Law is found in the subheading to Section IV of the evidentiary memorandum and in the press release announcing Rakhimov's designation. A.R. at 0012, 697-0702. The subheading merely states "Gafur Rakhimov Collaborates with Thieves." A.R. at 0012. All of the paragraphs falling under that subheading are redacted, and as such, there is no evidence supporting the factual inference made by the subheading. Furthermore, in seeking to establish how Rakhimov provides support or services to the Thieves-in-Law, the press release merely states that Rakhimov "assisted Thieves-in-Law by providing warning of law enforcement issues, arranging meetings, and addressing other problems." A.R. at 0700. Again, no evidence is offered to prove this inference. Thus, Rakhimov does not necessarily challenged OFAC's fact-finding process as Defendants suggest, *see* Def.'s Mot. at 15, ECF No. 12, but rather whether any facts exist at all to support Defendants designation of Rakhimov.

Moreover, although Defendants rely on the press release announcing Rakhimov's designation, *see* A.R. at 22, it is not clear that the language of that press release is appropriately part of the administrative record supporting Rakhimov's designation. Judicial review of agency

17

action is confined to the administrative record before the court, and review of any agency action under the APA "must be based on the full administrative record that was before the agency *at the time the decision was made*." *Namb v. Board of Governors of Federal Reserve System*, Civil Action Nos. 1:11-cv-00506 (BAH) (D.D.C. 2011) (emphasis added) (citing *Stainback v. Secretary of the Navy*, 520 F. Supp. 2d 181, 185 (D.D.C. 2007)). In this matter, the evidentiary memorandum—including its supporting exhibits—was signed by the Director of OFAC on December 21, 2017. However, Defendants' press release announcing Rakhimov's designation—and therefore all the allegations it contained—was not issued until the following day on December 22, 2017. Press Center, *Treasury Targets the "Thieves-in-Law" Eurasian Transnational Criminal Organization*. Further to the point, the copy of that press release which is included as an exhibit to the evidentiary memorandum signed on December 21, 2017, was apparently printed on December 28, 2017. *See* A.R. at 0697-704 Thus, it does not appear that the language from that press release was part of the administrative record before the agency at the time the decision was made, nor that it is appropriate for the Court to consider when determining whether OFAC's decision meets the standards of rationality imposed by the APA. Further, the press release is not evidence or reasoning at all to support Defendants' action, but rather is purportedly a summary of the information contained in the administrative record; thus, it is unclear how Defendants' can rely on a summary of their own action to defend the legality of that action. Finally, because the publicly disseminated press release is presumptively unclassified, it is not clear why its language does not appear elsewhere in the disclosed administrative record.

Defendants further state that the additional sections of the evidentiary memorandum—relating to the history and practices of the Thieves-in-Law and allegations of criminal activities by Rakhimov—corroborate OFAC's determination. Def. Mot. at 14, ECF No. 12. Defendants,

however, have not provided any evidence that is to be corroborated. Again, turning to the plain definition of the words that Defendants rely on, the term corroborate means "to strengthen or confirm; to make more certain <the witness corroborated the plaintiff's testimony>." BLACK'S LAW DICTIONARY 421 (10th ed. 2014). First, nothing in the background information on the history and practices of the Thieves-in-Law mentions anything supporting Defendants' allegations that Rakhimov collaborates with that organization, warns them of law enforcement issues, arranges meetings on their behalf, or addresses other problems. Indeed, the background information section detailing the history and practices of the Thieves-in-Law makes no mention of Rakhimov, whatsoever. Second, although the Defendants attempt to play up allegations of Rakhimov's involvement in criminal activities, their findings and exhibits provide no support that those alleged activities were in collaboration with the Thieves-in-Law, or related to that organization's law enforcement issues, meetings, or other problems.

Instead, Defendants allege that the information is corroborating because the allegations of criminal activities made against Rakhimov involve the types of activities that Thieves-in-Law also carry out. Def. Mot. at 14, ECF No. 12. This is, of course, irrational. By Defendants' logic, anyone alleged to  be involved in drug trafficking, extortion, money laundering, or robbery, is also providing support of services to the Thieves-in-Law. Defendants attempt to proactively address this irrationality by stating "the Court should defer to" this purported corroboration by citing to the Supreme Court in *Humanitarian Law Project*, which noted that "conclusions must often be based on informed judgment rather than concrete evidence . . ." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010). Defendants' desired corroboration does not fail for want of concrete evidence, however. Rather, it fails as their judgement is not informed by any facts apparent from the record. Thus, while Rakhimov does not contest that the agency may be afforded deference, that

does not mean the Court is merely a rubber stamp to affirm anything they say or any characterization of information they wish to apply, no matter how unsupported or irrational. *See Columbia Gas Transmission Corp. v. F.E.R.C*, 448 F.3d 382, 387 (D.C. Cir. 2006) ("It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive." (quoting *SEC v. Chenery Corp*., at 196-97)).

These errors are not, as the Defendants contend, harmless or non-prejudicial. Def.'s Mot. at 16, ECF No. 12. If OFAC has not marshalled evidence and reasoned from that evidence in support of its determination that Rakhimov has provided support or services to the Thieves-in-Law, and the additional information presented as corroboration does not in fact corroborate the conclusory assertions regarding Rakhimov alleged collaboration with that organization, then OFAC's determination was unlawful. *See Motor Vehicle Manufacturers Assoc. of the United States, Inc.*, 463 U.S. at 29 ("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a "'rational connection between the facts found and the choice made.'" (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962))).

For the foregoing reasons, OFAC's determination that Rakhimov meets the criteria for designation under E.O. 13581 for having provided support or services to the Thieves-in-Law is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as OFAC has not assembled and rationalized evidence in a manner supporting such determination. Accordingly, summary judgment as to Count I should be granted in favor of Rakhimov.

## II. DEFENDANTS FAILED TO PROVIDE RAKHIMOV WITH ADEQUATE NOTICE OF THE REASONS FOR HIS DESIGNATION UNDER E.O. 13581 AND THUS ACTED IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

Defendants' failure to provide Rakhimov with adequate notice as to the reasons for the decision to designate him under E.O. 13581 violated their obligations under the Due Process Clause of the Fifth Amendment to the U.S. Constitution. Rakhimov respectfully requests that this Court grant summary judgment in his favor as to Count II and issue an order directing Defendants to either disclose the redacted portions of the administrative record underlying his designation or provide alternative means by which Rakhimov may understand the reasons for his designation.

### A. Defendants Violated Rakhimov's Due Process Rights to Notice and a Hearing by Failing to Provide Adequate Notice as to Their Decision to Designate Him Under E.O. 13581

Persons must be provided notice and a hearing before the government can deprive them of a constitutionally protected liberty or property interest. *Nat'l Council of Resistance of Iran v. U.S. Dep't of State*, 251 F.3d 192, 205 (D.C. Cir. 2001) (finding this to be a "fundamental norm of due process clause jurisprudence") (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)). Due process is a "flexible" concept, requiring only "such procedural protections as the particular situation demands." *Fares v. Smith*, 249 F. Supp. 3d 115, 122 (D.D.C. 2017), *aff. Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018) (quoting *Mathews*, 424 U.S. at 334-35). Most importantly, due process requires that persons be afforded a meaningful opportunity to be heard. *Mathews*, 424 U.S. at 333 (1976). This procedural protection also applies in cases involving foreign nationals challenging their OFAC designations. *See Fares*, 901 F.3d at 315, 323 (noting that "[t]o determine whether OFAC's designation of a plaintiff provides constitutionally adequate notice—enabling

him meaningfully to avail himself of his opportunity to be heard—court weigh [the] three factors under the familiar *Mathews v. Eldridge* balancing test . . .").

While the D.C. Circuit has held that—with respect to foreign terrorist organizations—that it may tolerate an approach under which due process solely requires disclosure of the unclassified portions of the administrative record, that approach has only been "countenanced . . . in very limited, statutorily recognized circumstances . . ." *Fares*, 901 F.3d at 319. Moreover, "in [this] narrow category of cases" where the government is required only to disclose the unclassified portions of the administrative record, the D.C. Circuit has ensured that other procedural safeguards will nonetheless provide meaningful due process protections, including, for instance, by authorizing "strictly necessary adaptations of ordinary administrative and judicial process." *Id*. at 319, 324. This could include, for example, the government providing designated parties "with sufficiently specific 'unclassified summaries . . . that provide [designees] with the 'who,' 'what,' 'when,' and 'where' of the allegations" otherwise withheld from disclosure. *Id*. at 324 (quoting *Kiareldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001)); *see also Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. Cir. 2014) (stating that where the classified record provides essential support to OFAC's determination, the government may be required to make disclosures that provide the designee with "a basis from which to understand his designation, and thereby offer rebuttal arguments and evidence").

Another potential procedural safeguard to provide this understanding to a designee could include authorizing designee's cleared counsel to access the full administrative record in order to "verify the government's grounds . . ." *See Fares*, 901 F.3d at 323; *see also Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 982 (9th Cir. 2012) (noting that "to the extent

that it is feasible to permit a lawyer with security clearance to view the classified information, the value of those methods seems undeniable").

These procedural protections are designed to ensure that designated persons understand all of the reasons for their OFAC designations and prevent partial disclosures that would keep them from meaningfully responding to the factual bases for the designations. *See Fares*, 901 F.3d at 322 ("[D]isclosure of some but not all of the allegations against [a designee] impairs their ability to fully clear their names for delisting . . .") Where OFAC disclosed "only one of three reasons for its investigation and designation," the Ninth Circuit held notice to be "incomplete" and inconsistent with due process requirements. *Al Haramain*, 686 F.3d at 986. Due process requires that designated parties have an opportunity to present rebuttal evidence or otherwise negate claims that they meet the legal criteria for designation. *Nat'l Council of Resistance of Iran*, 251 F.3d at 209. That opportunity is present only when a designee understands all of the reasons supporting OFAC's determination.

Defendants' claims that OFAC's disclosures are consistent with its due process obligations, *see* Def.'s Mot. at 2, 19, ECF No. 12, fail when examining the content of those disclosures. First, on its face the disclosed administrative record does not provide notice of OFAC's findings in support of its determination that Rakhimov has provided support or services to the Thieves-in-Law through his collaboration with that organization. This is because all of the findings in support of OFAC's conclusion that "Rakhimov Collaborates with Thieves [in Law]" are redacted in the version of the administrative record provided to him.

Second, Defendants claim to have provided such notice through the Treasury Press Release announcing Rakhimov's re-designation, as that press release states that Rakhimov "collaborated with Thieves-in-Law on business" and that he "assisted Thieves-in-Law by providing warning of

law enforcement issues, arranging meetings, and addressing other problems." Def.'s Mot. at 19, ECF No. 12. Further, Defendants claim that their notice obligations are further satisfied because they apprised Rakhimov of their determination that they believe Rakhimov "is [i]nvolved in [c]riminal [a]ctivities[.]" *Id*.

Despite Defendants' assertions to the contrary, *see* Def.'s Mot. at 2, 19, ECF No. 12, the disclosed record does not provide notice as to the reasons for Rakhimov's designation, and thus deprives him of a meaningful opportunity to rebut the findings made by the agency in support of its determination. At the outset, it is worth keeping in mind that Rakhimov is designated for having provided support or services to an organization—the Thieves-in-Law—not for engaging in any alleged drug trafficking or other criminal activities. Thus, in order to provide Rakhimov a meaningful opportunity to respond to his designation in satisfaction of their notice obligations, Defendants should provide Rakhimov the reasons for OFAC's belief that he provides support or services to the Thieves-in-Law.

Instead of doing so, Defendants ask this Court to defer to OFAC's conclusion that evidence of Rakhimov's criminal activity corroborates evidence of his material assistance to Thieves-in-Law. Def.'s Mot. at 14-15, ECF No. 12. The cases they rely on, however, are readily distinguished form the facts at hand. The Court in *Holy Land* held that there was "ample evidence" that plaintiff continued to maintain its ties to another designated entity, including "testimony of numerous FBI sources and findings by both Israeli and Palestinian governmental authorities." *Holy Land Foundation*, 333 F.3d at 156. Here, OFAC has provided no such direct evidence—or anything remotely similiar to explain how Rakhimov collaborates with the Thieves-in-Law or otherwise is alleged to provide support or services to them. Further, this matter is nothing like *Joumaa v. Mnuchin* cited by Defendants. Def.'s Mot. at 22, ECF No. 12. *Joumaa* involved disclosure of

multiple unclassified summaries of information redacted from the administrative record, criminal indictments, and numerous unredacted paragraphs of findings relied upon to support OFAC's determination that the plaintiff in that case met the basis for designation under the Foreign Narcotics Kingpin Designation Act. *See Joumaa v. Mnuchin*, Civil Action No. 17-2780 (TJK) (D.D.C. Apr. 10, 2019).

As noted throughout this memorandum, instead of presenting evidence, the Defendants provide a litany of allegations of criminal activity that they do not connect to the Thieves-in-Law, *Id*. at 20, and merely restate the conclusory statements of their press release that Rakhimov collaborated with and otherwise assisted Thieves-in-Law. Although Defendants suggest that there is allegedly "corroborating evidence" that speaks to that collaboration, Def.'s Mot. at 13-14, ECF No. 12, they appear to fail to grasp the meaning of corroborating evidence. Similar to the definition of the term  corroborate provided above, "corroborating evidence" is "evidence that is independent of and different from but that supplements and strengthens evidence already presented as proof of a factual matter." MERRIAM-WEBSTER'S DICTIONARY OF LAW 172 (1996). Defendants here, however, have not presented any evidence supporting their allegation that Rakhimov collaborates with the Thieves-in-Law that could be corroborated. Specifically, there is no evidence provided as to Rakhimov's purported provision of warning of law enforcement issues to the Thieves-in-Law, any alleged arrangement of meetings, or that he assisted that organization in addressing other problems. Indeed, there is nothing in the record to identify what those "other problems" are that could be corroborated by OFAC's reference to the Thieves-in-Law's history or practices nor by allegations of criminal activity. Moreover, while Defendants claim that they have provided "types, dates, and locations" of activities presented as corroborating evidence, Def.s Mot. at 20, ECF No. 12, they have not provided the who, what, when, and where of the allegations most material to

their designation action—i.e., that Rakhimov collaborates with the Thieves-in-Law. *See Fares*, 901 F.3d at 324; *see also Kiareldeen*, 273 F.3d at 548.

As a result, even if Rakhimov sought to rebut the information disclosed to him, he would not be in a position to address OFAC's reasons or findings for concluding that Rakhimov collaborates with the Thieves-in-Law—the critical conclusion underlying OFAC's determination that he has supported or provided services to that organization. This is because those reasons or findings remain completely obscure to him. Courts have traditionally found that partial disclosures of the reasons for a designation to a designee may not suffice to warrant the rescission of the designation as the designee will have failed to rebut those reasons for the designation that remain obscure to them. *See Fares*, 901 F.3d at 322; *Al Haramain*, 686 F.3d at 986. As noted above, Defendants have not provided any unclassified summary of the redacted portions of the administrative record, nor provided any other alternative means to provide a basis from which Rakhimov can understand even partial reasons for its conclusion that he collaborates with the Thieves-in-Law, much less the full reasons for his designation. Thus, Defendants' partial disclosure of the reasons for Rakhimov's designation is insufficient to accord with due process.

Defendants seek to circumvent this failure by arguing that this administrative record provides all the notice that is due Rakhimov under this Circuit's precedent, arguing that "due process require[s] the disclosure of *only* the unclassified portions of the administrative record." Def.'s Mot. at 22, ECF No. 12. As an initial point, however, courts have recognized that when taken to its logical extreme "the notion that a redacted record will always suffice to provide sufficient notice is clearly wrong…" *Fares v. Smith*, 249 F. Supp. 3d 115 (D.D.C. 2017); *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 613 F.3d 220, 231 (D.C. Cir. 2010). In the instant matter, OFAC redacted all of the agency's findings and related evidence purporting to show that

Rakhimov collaborates with the Thieves-in-Law, and redacted most of the findings and related evidence alleging that he is involved in criminal activities. Thus, on its face, there is critical information being withheld from Rakhimov that will be necessary to rebutting OFAC's action, and just because Defendants provided an unclassified copy of the administrative record does not mean that they have inherently satisfied their due process obligations given that withholding.

Furthermore, Defendants claim that "[t]he unclassified portions of the administrative record alone provide an unambiguous, rational basis for the agency's determination that Rakhimov 'has materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, the [Thieves-in-Law].'" Def.'s Mot. at 12, ECF No. 12. Defendants, however, undermine their own assertion in explaining that they relied on "key information" considered by OFAC in connection with its decision that is classified or law enforcement privileged. *Id.* at 6, n.4. This concession by Defendants, in fact, confirms the inadequacy of the notice Rakhimov has received, as it acknowledges that Defendants critically rely on undisclosed classified material, and their reliance does not necessarily comport with due process where a classified record is essential to upholding the action. *Fares,* 249 F. Supp. 3d at 123 *(*citing *People's Mojahedin Org.,* 613 F.3d at 231); *Zevallos*, 793 F.3d at 118.

An opportunity to fully understand the reasons for a designation is required under this Circuit's precedent. *See Fares*, 901 F.3d at 323. Partial disclosure of OFAC's findings is clearly not a sufficient substitute. *Id.* at 322 ("[D]isclosure of some but not all of the allegations against [a designee] impairs their ability to fully clear their names for delisting . . .") If OFAC has concerns regarding disclosure of classified or otherwise privileged information contained in the administrative record, then it must provide alternative means by which Rakhimov may receive notice of all the reasons for his designation.

Defendants argue that they are not required to provide an unclassified summary of classified information, and that there is no basis or reason to permit Rakhimov's counsel access to the unredacted record. *See* Def.'s Mot. at 22-24, ECF No. 12. Rakhimov does not argue that provision of either the unclassified summary or Rakhimov's counsel's access to the unredacted record are required. All that is required—whether by disclosure of the full administrative record or by other alternative means—is an opportunity for Rakhimov to fully understand the reasons for his designation. Thus, Rakhimov does not suggest that this Court "break new ground" and mandate "that OFAC produce to a SDN an unclassified and non-privileged summary of otherwise classified and privileged information." Def.'s Mot. at 23, ECF No. 12. Rather, Rakhimov requests that the Court mandate that he be afforded a full understanding of the reasons for his designation—through whatever means that the agency should choose as appropriate.

Despite Defendants' protestations to the contrary, the concept of providing alternative means of notice where classified or sensitive information can be disclosued is not a foreign or outlandish concept. Indeed, the Ninth Circuit in *Al Haramain,* however, found that "[t]o the extent that an unclassified summary could provide helpful information, such as the subject matter of the agency's concerns, and to the extent that it is feasible to permit a lawyer with security clearance to view the classified information, the value of those methods seems undeniable. Indeed, the benefits from such disclosure could flow not only to the designated entity, which may be able to clear up errors, but also to OFAC, which may benefit from the resulting information provided by the designated entity." *Al Haramain Islamic Found., Inc*, 686 F.3d at 982-83. Furthermore, OFAC itself often provides unclassified summaries of classified or privileged information withheld from the administrative records disclosed to parties challenging their designations. *See generally* e.g., *Fares*, 249 F. Supp. 3d at 115; *Joumaa*, Civil Action No. 17-2780 (TJK).

In sum, the provision of an unclassified summary of the classified information contained in an administrative record or granting cleared counsel access to the unredacted administrative record are merely two possible solutions expressly recognized by the D.C. Circuit in *Fares* to satisfy that requirement. Specifically, OFAC could provide "sufficiently specific 'unclassified summaries . . . that provide [designees] with the 'who,' 'what,' 'when,' and 'where' of the allegations." *Fares,* 901 F.3d at 324 (quoting *Kiareldeen*, 273 F.3d at 548). And while Defendants imply that national security is too important to be entrusted to Rakhimov's counsel in this matter, *See* Def.'s Mot. at 23, ECF No. 12, undersigned counsel has previously obtained security clearances in private practice for his representation of other clients in U.S. litigation. In doing so, he was then, and would be here bound by U.S. law—just as are all security clearance holders— not to divulge or disseminate classified information. *See* 18 U.S.C. § 798.

Regardless of the means chosen, ultimately the burden is on the Defendants to ensure that Rakhimov is provided sufficient notice of his designation so as to have a meaningful opportunity to challenge it. *See Zevallos*, 793 F.3d at 106, 116. Defendants' due process obligations are thus clear: they must provide Rakhimov with adequate notice of all of the reasons for his designation, including the reasons serving as a basis for OFAC's determination that he meets the criteria for designation. They have failed to do so.

For these reasons, Defendants have precluded Rakhimov from understanding the reasons for his designation and from meaningfully contesting those allegations in violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution. Rakhimov should thus be granted summary judgment as to Count II.

B.      *Rakhimov Has Alleged Sufficient Contacts to the United States to Claim a Constitutional Right to Due Process*

Courts have repeatedly held that foreign nationals may be owed constitutional protection. See, e.g., *Plyler v. Doe*, 457 U.S. 202 (1982); *Kwong Hai Chew v. Colding*, 344 U.S. 590 (1953); *Bridges v. Wixon*, 326 U.S. 135 (1945); *Russian Volunteer Fleet v. United States*, 282 U.S. 481 (1931); *Wong Wing v. United States*, 163 U.S. 228 (1896); *Yick Wo v. Hopkins*, 118 U.S. 356 (1886). All of the specific circumstances under which foreign nationals may be afforded the protections of the U.S. Constitution have not yet been identified. *See, e.g.*, *Nat'l Council of Resistance of Iran*, 251 F.3d at 201-202. Nor has the specific criteria by which to determine whether a foreign national residing outside the United States satisfies the "substantial connections" test or can otherwise fairly assert constitutional rights with respect to the blocking of their property. *See Kadi*, 42 F. Supp. 3d at 25.

For instance, this Court has stated that the D.C. Circuit has thus far failed to "address[] whether such rights turn on the presence of property in the United States, or whether [a foreign national] can raise certain constitutional claims, but not others." *Id*. at 25 (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264-66 (1990)). The *Kadi* court found instructive the Circuit's decisions in challenges to Foreign Terrorist Organization ("FTO") designations, which similarly involved foreign nationals asserting constitutional due process rights. *Id*. at 26. The *Kadi* court noted that "[t]he D.C. Circuit has not explicitly addressed what criteria the Court should apply in considering whether a foreign national residing outside the United States can satisfy the 'substantial connection' test to raise rights under the U.S. Constitution related to the blocking or freezing of his assets. Nor has the D.C. Circuit addressed whether such rights turn on the presence of property in the United States, or whether [Plaintiff] can raise certain constitutional claims, but not others." *Id*. at 25.

Defendants challenge Rakhimov's standing to assert a constitutional right to due process, arguing that "as a foreign national without substantial contacts with the United States, Rakhimov cannot assert any rights under the Fifth Amendment." Def.'s Mot. at 2, ECF No. 12. Defendants assert that Rakhimov has no physical presence in the United States and that his claim that his property and interests in property within U.S. jurisdiction are blocked "is merely a description of the legal consequence of his designation" insufficient to establish a substantial connection to the United States. *Id*. at 17-18. Moreover, Defendants argue that Rakhimov's property would still be insufficient under *Verdugo-Urquidez* to support his claim to constitutional protections, particularly in the context of a summary judgment motion. *Id*. at 18. Defendants are wrong on all counts.

The Amended Complaint alleged that Rakhimov's property and interests in property within U.S. jurisdiction were blocked as a result of Defendants' actions. Am. Compl. ¶ 3, ECF No. 10. Further, Defendants themselves state that OFAC designated Rakhimov as a SDN, "thereby blocking all of Rakhimov's property and interests in property in the United States or in the possession or control of a U.S. person." Def.'s Mot. at 1, ECF No. 12. As the D.C. Circuit has held, nothing in *Verdugo-Urquidez* "purports to establish whether aliens who have entered the territory of the United States and developed connections with this country but not substantial ones are entitled to constitutional protections." See *Nat'l Council of Resistance of Iran*, 251 F.3d at 202. Rather, *Verdugo-Urquidez* posited that foreign nationals who "have come within the territory of the United States and developed substantial connections to this country" are entitled to constitutional protection. *Verdugo-Urquidez* therefore requires the Court to take a more scrutinizing look at whether Rakhimov's purported connections to the United States merit constitutional protection. For the reasons discussed herein, Rakhimov believes that they do.

This Court—in reviewing the relevant case law—looked precisely to "the presence of property" as the "benchmark for satisfying the 'substantial connections' test, and whether a party has the ability to raise constitutional claims, at least with respect to that property." *Kadi*, 42 F. Supp. at 26. Blocked property within the United States is then central to this standing analysis.[3] Furthermore, while Defendants' rely on *Williams v. Lew*, that case dealt with speculative harm which was uncertain to occur. *See Williams v. Lew*, 819 F.3d 466, 474 (D.C. Cir. 2016). Here, Defendants concede that OFAC designated Rakhimov "thereby blocking all of Rakhimov's property and interests in property in the United States or in the possession or control of a U.S. person." Def.'s Mot. at 1, ECF No. 12. As a direct legal consequence of OFAC's designation, Rakhimov is barred from the U.S. financial system or from being involved in any transaction or dealing with a U.S. nexus, foreign parties that engage in transactions or dealings with him expose themselves to U.S. sanctions risk. Am. Compl. ¶ 46, ECF No. 10. The harm to Rakhimov in this matter is therefore not speculative, but rather certain, occurring, and continuous.

For the foregoing reasons, this Court is respectfully requested to deny Defendant's motion to dismiss Count II of the Amended Complaint, and should grant summary judgment in favor of Rakhimov as that count.

### III. DEFENDANTS FAILED TO PROVIDE RAKHIMOV WITH ADEQUATE NOTICE OF THE REASONS FOR HIS DESIGNATION UNDER E.O. 13581 IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

It is a fundamental tenet of administrative law that an agency's failure to set forth its reasons for a decision constitutes arbitrary and capricious agency action for purposes of the APA.

---

[3] Considering that U.S. persons are required to submit blocking reports to OFAC if they come in possession of or control over any property or interests in property in which Rakhimov maintains an interest, *see* 31 C.F.R. § 501.603, whether Rakhimov has property blocked in the United States or by a U.S. person, wherever located, may be an issue fit for discovery, notwithstanding the dispositive motions filed by both parties.

*Tourus Records v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001) (citing *Roelofs v. Sec. of the Air Force*, 628 F.2d 594, 599 (D.C. Cir. 1980)). By requiring agencies to set forth the reasons for their decision, affected parties are afforded the opportunity to address any errors an agency may have made in reaching its decision and judicial review is facilitated in the instance that an agency persists in its wrongful action. *Id.*

This requirement also ensures that the APA's administrative reconsideration procedures, which allow for interested persons to appear before an agency to seek a "determination of an issue, request, or controversy in a proceeding," 5 U.S.C. § 555(b), are procedurally fair. In the instant case, OFAC implements the APA's reconsideration procedures through its delisting procedures set forth at 31 C.F.R. § 501.807, which allow for designated persons to seek reconsideration of their designation or assert that the circumstances giving rise to the designation are not applicable. Under OFAC's delisting procedures, designated persons are expressly permitted to provide evidence or arguments that they believe establishes an insufficient basis for the designation or to propose remedial measures that they believe would negate the basis for the designation. 31 C.F.R. § 501.807(a). These procedures clearly presume that designated persons have an understanding of the reasons for their designation and are placed in a position to offer rebuttal evidence to OFAC or propose remedial steps that render the factual bases for the designation inapplicable.

Defendants themselves concede that the APA requires federal agencies to provide some form of notice apprising affected parties as to the basis for the agency's action—"the APA requires OFAC to provide Rakhimov with the administrative record related to its decision once a lawsuit is initiated." Def.'s Mot. at 24, ECF No. 12. Defendants also argue, however, that the APA does not require OFAC to provide Rakhimov with the classified or otherwise protected portions of the

administrative record or anything more than what he has already been provided. *Id.* Defendants are in error.

The APA entitles Rakhimov to know the reasons for the agency's action against him and to request OFAC to reconsider its action through a delisting process. *See*, *e.g.*, 5 U.S.C. § 555(b); 31 C.F.R. § 501.807; *Tourus Records, Inc.*, 259 F.3d at 736. Absent adequate notice, Rakhimov would clearly be at a significant and unlawful disadvantage in undertaking OFAC's administrative reconsideration procedures. For, as noted above, Rakhimov would have no reasonable ability to meet his burden under those regulations given his lack of understanding as to the factual circumstances under which he was designated. Barring Rakhimov notice as to the reasons for his designation would render the APA's reconsideration procedures, as well as OFAC's own delisting procedures, an empty gesture falling far short of what due process requires. *See Zevallos*, 793 F.3d at 116. Addressing the circumstances that resulted in a designation is a necessary predicate to seeking administrative reconsideration of that designation, and accordingly understanding those circumstances is the only way to address them. *See* 31 C.F.R. § 501.807.

Defendants claim that Rakhimov's submission of evidence and questionnaire responses in the administrative reconsideration process show that "OFAC has also provided him a meaningful opportunity to challenge OFAC's amended designation decision." Def.'s Mot. at 23, ECF No. 12. It does not necessarily follow, however, that because a party has submitted information to OFAC that they are meaningfully challenging their designation. Indeed, it could be the case that Rakhimov's submissions to OFAC thus far have not addressed any of OFAC's findings that Rakhimov has provided support or services to the Thieves-in-Law. Rakhimov would be unaware of this failure, however, because—outside of OFAC's conclusory allegations in its press release announcing the designation—OFAC continues to conceal those findings or reasons.

OFAC, as noted above, has clearly fallen far short of its obligation to provide the reasons for its designation of Rakhimov. Almost all substantive portions of the evidentiary memorandum underlying OFAC's conclusion that Rakhimov collaborates with Thieves-in-Law are redacted in the administrative record disclosed to Rakhimov. Left without a clear idea as to the reasons for OFAC's decision to designate him, Rakhimov is in no position to fairly utilize OFAC's delisting procedures to challenge his designation. This violates Defendants' obligations under the APA to provide notice to designated parties, and, as a result, this Court should grant summary judgment in Rakhimov's favor with respect to Count III of the Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss or, in the alternative, for summary judgment; grant Rakhimov's motion for summary judgment; and enter judgment in favor of Rakhimov on all claims.


Dated: February 4, 2020                                    Respectfully submitted,


                                                          /s/ Erich C. Ferrari
                                                          Erich C. Ferrari, Esq.
                                                          FERRARI & ASSOCIATES, P.C.
                                                          1455 Pennsylvania Avenue, NW
                                                          Suite 400
                                                          Washington, D.C. 20004
                                                          Telephone: (202) 280-6370
                                                          Fax: (877) 448-4885
                                                          Email: ferrari@falawpc.com
                                                          D.C. Bar No. 978253


                                                          Attorney for Plaintiff
                                                          *Gafur Rakhimov*