**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GAFUR-ARSLANBEK
AKHEMDOVICH RAKHIMOV,

        Plaintiff,

    v.

ANDREA M. GACKI, *et al.*,

        Defendants.

Civil Action No. 19-2554 (JEB)

**DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFF'S CROSS-MOTION**
**FOR SUMMARY JUDGMENT AND**
**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

DISCUSSION ..................................................................................................................... 2

I.     OFAC's Decision Was Not Arbitrary Or Capricious ........................................................ 2

II.    OFAC's Decision Comports With The Fifth Amendment .................................................. 9

      A.     Rakhimov Cannot Assert Constitutional Rights ....................................................... 9

      B.     Rakhimov's Due Process Claim Fails On The Merits .......................................... 14

               1.     Due Process Does Not Require OFAC To Produce Unclassified Summaries Or To Grant Cleared Counsel Access To The Classified Record .................................................. 14

               2.     OFAC Has Provided Rakhimov A Basis From Which To Understand His Amended Designation ........................................ 20

III.    OFAC Has Provided Rakhimov Sufficient Notice Under The APA .............................. 24

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**CASES**

*32 Cty. Sovereignty Comm. v. Dep't of State*,
292 F.3d 797 (D.C. Cir. 2002) ................................................................ 12

*Al Haramain Islamic Foundation, Inc. v. U.S. Department of Treasury*,
686 F.3d 965 (9th Cir. 2012) ................................................................ 19

*Al-Aqeel v. Paulson*,
568 F. Supp. 2d 64 (D.D.C. 2008) ......................................................... 7

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) ............................................................... 11

*Associated Gen. Contractors of Am. v. Cardillo*,
106 F.2d 327 (D.C. Cir. 1939) ............................................................... 7

*Chem. Mfrs. Ass'n v. EPA*,
28 F.3d 1259 (D.C. Cir. 1994) ............................................................... 6

*Commercial Drapery Contractors v. United States*,
133 F.3d 1 (D.C. Cir. 1998) ........................................................... 13, 20

*Conservation Law Found. v. Evans*,
209 F. Supp. 2d 1 (D.D.C. 2001) .......................................................... 6

*Dep't of Navy v. Egan*,
484 U.S. 518 (1988) ............................................................................ 17

*Ellsberg v. Mitchell*,
709 F.2d 51 (D.C. Cir. 1983) ............................................................... 17

*Fares v. Smith*,
901 F.3d 315 (D.C. Cir. 2018) ........................................... 5, 16, 17, 18

*Fares v. Smith*,
249 F. Supp. 3d 115 (D.D.C. 2017) ..................................................... 19

*FBME Bank Ltd. v. Lew*,
125 F. Supp. 3d 109 (D.D.C. 2015) ..................................................... 16

*Friends of The Earth v. U.S. Dep't of Interior*,
236 F.R.D. 39 (D.D.C. 2006) ............................................................... 13

*Frizelle v. Slater*,
   111 F.3d 172 (D.C. Cir. 1997) .................................................................... 3, 6, 24

*Gardner v. United States*,
   211 F.3d 1305 (D.C. Cir. 2000) ......................................................................... 11

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) ........................................................................................... 3, 6, 8

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
   333 F.3d 156 (D.C. Cir. 2007) ................................................................... *passim*

*Humane Soc'y of the U.S. v. Perdue*,
   935 F.3d 598 (D.C. Cir. 2019) ........................................................................... 11

*Islamic Am. Relief Agency v. Gonzales*,
   477 F.3d 728 (D.C. Cir. 2007) ..................................................................... 2, 4, 5

*Jifry v. FAA*,
   370 F.3d 1174 (D.C. Cir. 2004) .............................................................. 15, 19, 21

*Johnson v. Eisentrager*,
   339 U.S. 763 (1950) ............................................................................................ 9

*Joumaa v. Mnuchin*,
   Civ. A. No. 17-2780 (TJK), 2019 WL 1559453 (D.D.C. Apr. 10, 2019),
   *appeal filed*, No. 19-5166 (D.C. Cir. June 6, 2019) ................................... 4, 16

*Kadi v. Geithner*,
   42 F. Supp. 3d 1 (D.D.C. 2012) ................................................................... *passim*

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ............................................................................................ 24

*Nat'l Council of Resistance of Iran v. Dep't of State*,
   251 F.3d 192 (D.C. Cir. 2001) ................................................................... *passim*

*Nat'l Shooting Sports Found., Inc. v. Jones*,
   716 F.3d 200 (D.C. Cir. 2013) ........................................................................... 24

*NRDC v. Hodel*,
   865 F.2d 288 (D.C. Cir. 1988) ............................................................................ 6

*People's Mojahedin Org. of Iran v. Dep't of State*,
   327 F.3d 1238 (D.C. Cir. 2003) ................................................................... 15, 16

*People's Mojahedin Org. of Iran v. U.S. Dep't of State*,
  182 F.3d 17 (D.C. Cir. 1999) ............................................................................ 11, 12

*Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*,
  823 F.2d 574 (D.C. Cir. 1987) .................................................................................. 6

*Sulemane v. Mnuchin*,
  Civ. A. No. 16-1822 (TJK), 2019 WL 77428 (D.D.C. Jan. 2, 2019) ........................ 24

*Tanner-Brown v. Jewell*,
  153 F. Supp. 3d 102 (D.D.C. 2016),
  *aff'd sub nom*, *Tanner-Brown v. Zinke*, 709 F. App'x 17 (D.C. Cir. 2017) ............ 10

*Treasure State Res. Indus. Ass'n v. EPA*,
  805 F.3d 300 (D.C. Cir. 2015) ................................................................................... 3

*Trudeau v. FTC*,
  456 F.3d 178 (D.C. Cir. 2006) ................................................................................. 10

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) ............................................................................................... 8

*United States v. Ball*,
  962 F. Supp. 2d 11 (D.D.C. 2013) ............................................................................. 8

*United States v. Castle*,
  825 F.3d 625 (D.C. Cir. 2016) ................................................................................... 8

*United States v. Monteiro*,
  447 F.3d 39 (1st Cir. 2006) ........................................................................................ 8

*United States v. Verdugo-Urquidez*,
  494 U.S. 259 (1990) ............................................................................................. 9, 10

*Williams v. Lew*,
  819 F.3d 466 (D.C. Cir. 2016) ................................................................................. 10

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ................................................................................................. 12

*Zarmach Oil Servs., Inc. v. U.S. Dep't of the Treasury*,
  750 F. Supp. 2d 150 (D.D.C. 2010) ........................................................................... 2

*Zevallos v. Obama*,
  10 F. Supp. 3d 111 (D.D.C. 2014),
  *aff'd*, 793 F.3d 106 (D.C. Cir. 2015) ............................................................... *passim*

**STATUTES**

5 U.S.C. § 706 .................................................................................................... 22, 24

50 U.S.C. § 1702 ............................................................................................ 5, 10, 14

**REGULATIONS**

31 C.F.R. § 501.807 ................................................................................................ 25

**RULES**

Fed. R. Civ. P. 12 ........................................................................................ 13, 23, 25

Fed. R. Civ. P. 56 .................................................................................... 9, 13, 23, 25

**OTHER AUTHORITIES**

Exec. Order No. 13,581,
     76 Fed. Reg. 44,757 (2011) .............................................................................. *passim*

## INTRODUCTION

Plaintiff Gafur-Arslanbek Akhemdovich Rakhimov asks this Court to overturn the well-reasoned decision of the Office of Foreign Assets Control ("OFAC"), made in the context of national security and foreign affairs, that Rakhimov has materially assisted a transnational criminal organization known as "Thieves-in-Law" and, consequently, that his assets should be blocked pursuant to the International Emergency Economic Powers Act ("IEEPA") and Executive Order No. 13581 ("EO 13581").  As explained in Defendants' motion to dismiss or, in the alternative, for summary judgment, Rakhimov cannot justify such judicial intervention based on either his substance- or process-related arguments.  *See* Mem. in Supp. of Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J. at 10-25, ECF No. 12-1 ("Defs.' Mem.").  Rakhimov's response does not establish otherwise.  *See* Mem. of P.&A. in Supp. of Pl.'s Cross-Mot. for Summ. J. & in Opp'n to Defs.' Mot. to Dismiss or, in the Alternative, Mot. for Summ. J., ECF Nos. 13-1, 14 (collectively, "Pl.'s Opp.").  This Court should therefore enter judgment for Defendants.

First, Rakhimov claims that OFAC's decision is arbitrary and capricious, purportedly because OFAC has failed to demonstrate a sufficient nexus between Rakhimov and Thieves-in-Law.  *Id.* at 14-20.  This argument, however, misapprehends the applicable standard of review under the Administrative Procedure Act ("APA").  OFAC reasonably determined that Rakhimov has materially assisted Thieves-in-Law, including by relying on corroborating evidence of his criminal activities.  Further, the unredacted record that will be made available to the Court for its *ex parte*, *in camera* review provides evidence supporting OFAC's decision beyond that provided to Rakhimov.  Accordingly, in light of the record as a whole, Rakhimov is unable to cast doubt

on the reasonableness of OFAC's determination that he should be added to the list of Specially Designated Nationals and Blocked Persons ("SDN List").

Second, although Rakhimov continues to press his claim under the Fifth Amendment, Pl.'s Opp. at 21-29, he has had no contact with the United States, let alone the substantial contact required for a foreign national to assert constitutional rights. Moreover, assuming *arguendo* that Rakhimov had demonstrated such contact, his argument fails on the merits; OFAC adequately apprised Rakhimov of the basis for its decision, and Rakhimov's insistence that he is entitled to access classified and law enforcement privileged materials—or an unclassified or non-privileged summary of such materials—finds no basis in law. For similar reasons, Rakhimov's claim that OFAC has not provided him adequate notice under the APA is without merit.

Defendants' motion to dismiss or for summary judgment should therefore be granted, and Rakhimov's cross-motion should be denied.

## DISCUSSION

## I.     OFAC's Decision Was Not Arbitrary Or Capricious

As detailed in Defendants' motion, OFAC reasonably concluded that Rakhimov provides material assistance to Thieves-in-Law based on the evidence before the agency. Defs.' Mem. at 14-20. This conclusion is entitled to substantial deference. *E.g.*, *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) ("[O]ur review—in an area at the intersection of national security, foreign policy, and administrative law—is extremely deferential." (citations omitted)); *Zarmach Oil Servs., Inc. v. U.S. Dep't of the Treasury*, 750 F. Supp. 2d 150, 155 (D.D.C. 2010) ("[C]ourts owe a substantial measure of 'deference to the political branches in matters of foreign policy,' including cases involving blocking orders." (citation omitted)).

In response, Rakhimov claims that the redacted administrative record does not establish a sufficient nexus between him and Thieves-in-Law.  Pl.'s Opp. at 14-20.  In Rakhimov's view, such a nexus can only be established by the disclosure of information "of how Rakhimov allegedly collaborates with the Thieves-in-Law, which Thieves-in-Law he allegedly collaborates with, [or] whether any alleged collaboration is carried out with individual Thieves-in-Law independently or instead is with the Thieves-in-Law as an organization."  *Id.* at 14.  Additionally, Rakhimov suggests that OFAC must "state that Rakhimov is a Thief-in-Law, [or] that his alleged involvement in criminal activities . . . was perpetrated in furtherance of the activities of, or in collaboration with, the Thieves-in-Law."  *Id.*  Rakhimov is mistaken.

As an initial matter, Rakhimov demands too much under the APA.  "[A]n agency's decision [need not] be a model of analytic precision to survive a challenge[,]" and "[a] reviewing court will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997) (citation omitted); *see also Treasure State Res. Indus. Ass'n v. EPA*, 805 F.3d 300, 309 (D.C. Cir. 2015) ("Under the APA, [the agency] must 'conform to certain minimal standards of rationality.'" (citation omitted)).  And as the Supreme Court has explained, "[i]n th[e] context [of national security and foreign policy], conclusions must often be based on informed judgment rather than concrete evidence, and that reality affects what [courts] may reasonably insist on from the Government."  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34-35 (2010); *see also id.* at 35 ("The Government, when seeking to prevent imminent harms in the context of international affairs and national security, is not required to conclusively link all the pieces in the puzzle before we grant weight to its empirical conclusions.").  Consistent with these pronouncements, courts considering sanctions-related challenges have upheld OFAC's decisions without the type of specific

information and granular analysis contemplated by Rakhimov.  *E.g.*, *Joumaa v. Mnuchin*, Civ. A.

No. 17-2780 (TJK), 2019 WL 1559453, at *8 (D.D.C. Apr. 10, 2019) (holding record

demonstrated a sufficient nexus between the plaintiff's money laundering and narcotics

trafficking, based in part on OFAC's finding that the plaintiff "is associated with a designated []

individual in the pick up of bulk drug proceeds in Europe to launder to Colombia"), *appeal filed*,

No. 19-5166 (D.C. Cir. June 6, 2019); *see also Islamic Am. Relief Agency*, 477 F.3d at 734

(holding substantial evidence supported designation decision, where "the unclassified record

evidence is not overwhelming" but "contain[ed] various types of evidence from several different

sources, and cover[ed] an extended period of time").  The Court should thus decline to adopt the

standard proposed by Rakhimov.

  Rakhimov's argument is also unpersuasive insofar as he assumes that the redacted

administrative record provides the full extent of OFAC's findings.  Pl.'s Opp. at 14, 16-18.

Rakhimov, for instance, asserts that "there is no evidence supporting" OFAC's finding regarding

Rakhimov's collaboration with Thieves-in-Law, because "[a]ll of the paragraphs falling under

that subheading [in OFAC's evidentiary memorandum] are redacted[.]"  *Id.* at 17.  He similarly

claims that "no evidence is offered" in OFAC's press release concerning his collaboration with

the criminal enterprise, Pl.'s Opp. at 17, and "Defendants . . . have not provided any evidence

that is to be corroborated," *id.* at 18-19; *see also id.* at 25 ("Defendants . . . have not presented

any evidence supporting their allegation that Rakhimov collaborates with the Thieves-in-Law

that could be corroborated.").  Yet as Defendants have explained, Defs.' Mem. at 13-14, in

addition to the unclassified record provided to Rakhimov, the classified and privileged portions

of the record further support OFAC's conclusion that Rakhimov meets the criteria for

designation under EO 13581.  IEEPA expressly permits the government to rely on and provide

such information to the Court for *ex parte*, *in camera* review.  50 U.S.C. § 1702(c); *see Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 197 (D.C. Cir. 2001) ("[T]he record can, and in our experience generally does, encompass classified information . . . as to which the alleged terrorist organization never has any access[.]" (internal quotations marks omitted)); *Fares v. Smith*, 901 F.3d 315, 324-25 (D.C. Cir. 2018) (rejecting argument that OFAC cannot rely on undisclosed classified and law enforcement privileged information to support a designation).  Accordingly, Defendants respectfully refer the Court to the unredacted record for additional information supporting OFAC's decision.  *Islamic Am. Relief Agency*, 477 F.3d at 734 ("[A]lthough we deem it unnecessary to sustain OFAC's actions, the classified record contains extensive evidence that [the plaintiff meets the criteria for designation].").

Nor can Rakhimov advance his argument by claiming that "nowhere in the disclosed administrative record is there anything but conclusory statements of Rakhimov's connection to dealings with the Thieves-in-Law."  Pl.'s Opp. at 2; *see also id.* at 3, 11, 14, 16-17, 20.  Again, Rakhimov only speculates about the contents of the unredacted record.  But in any event, OFAC did not simply state in the redacted record that Rakhimov provides material assistance to Thieves-in-Law; rather, the agency found that Rakhimov "has collaborated with Thieves-in-Law on business, as well as assisted Thieves-in-Law by providing warning of law enforcement issues, arranging meetings, and addressing other problems."  Administrative Record ("A.R.") at 0700.  Additionally, OFAC appropriately relied on corroborating evidence that the types of illicit activities engaged in by Rakhimov—such as drug trafficking, money laundering, extortion, and robbery—are the same as those conducted by Thieves-in-Law.  *See id.* at 0003, 0015, 0517-20, 0565, 0698, 0700.  For instance, OFAC described Rakhimov's extensive heroin trafficking network as of 2014, *id.* at 0015, 0527, 0700, as well as the fact that he was wanted in Uzbekistan

on charges of extortion, forgery, and money laundering as of 2013, *id.* at 0015, 0565.  Thus the "agency's path may reasonably be discerned," *see Frizelle*, 111 F.3d at 176, based on the specific evidence cited by OFAC.  The APA requires nothing more.

The cases referenced by Rakhimov to suggest that OFAC's findings are "conclusory," Pl.'s Opp. at 16-17, are plainly inapposite.  Notably, those cases did not arise in the national security and foreign policy context, where courts must defer to the Executive Branch's informed assessments of the evidence.  *See Humanitarian Law Project*, 561 U.S. at 34.  Additionally, the courts in those cases did not fault the agency for providing insufficiently specific factual findings in the context of an informal adjudication.  Instead, two of the cases concerned the agency's failure to adequately consider concerns raised by commenters.  *See Conservation Law Found. v. Evans*, 209 F. Supp. 2d 1, 13 (D.D.C. 2001), cited in Pl.'s Opp. at 16; *Chem. Mfrs. Ass'n v. EPA*, 28 F.3d 1259, 1266 (D.C. Cir. 1994), cited in Pl.'s Opp. at 16.  In this case, Rakhimov is not entitled to any pre-deprivation notice.  *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 163-64 (D.C. Cir. 2007).  Another case relied on by Rakhimov involved the application of the deliberative process privilege in a challenge under the Freedom of Information Act, where the court observed that if "*no factual support* is provided for an essential element of the claimed privilege or shield, the label 'conclusory' is surely apt." *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) (emphasis added), cited in Pl.'s Opp. at 16-17.  Here, by contrast, the administrative record is replete with factual support.  *See generally* A.R. at 0012-17.  And in a fourth case, the court found remarks in an environmental impact statement "conclusory" because they "do not equip a decisionmaker to make an informed decision about alternative courses of action or a court to review the Secretary's reasoning," *NRDC v. Hodel*, 865 F.2d 288, 298 (D.C. Cir. 1988), cited in

6

Pl.'s Opp. at 17, whereas here the evidence before OFAC was more than adequate to permit the agency to render a decision, as well as for the Court to review that decision.

Rakhimov's remaining arguments are without merit. According to Rakhimov, the Court cannot consider the information contained in OFAC's press release because it is allegedly not part of the administrative record. Pl.'s Opp. at 17-18. In Rakhimov's view, "it does not appear that the language from that press release was part of the administrative record before the agency at the time the decision was made[.]" *Id.* at 18. Again, Defendants respectfully refer the Court to the unredacted record, and further note that (1) the press release was prepared close in time with the agency decision, A.R. at 0001, 0697; (2) the press release on its face conveys the basis for OFAC's decision, *id.* at 0700; and (3) courts have considered information in OFAC's press releases when evaluating challenges to sanctions designations, *see Al-Aqeel v. Paulson*, 568 F. Supp. 2d 64, 71 (D.D.C. 2008) (rejecting claim that SDN lacked adequate notice given "the press release announcing the designation on the Treasury Department website").

Rakhimov also asserts that OFAC "irrational[ly]" concluded that "the information [regarding Rakhimov's criminal activities] is corroborating because" it "involve[s] the types of activities that Thieves-in-Law also carry out." Pl.'s Opp. at 19. He adds that "[b]y Defendants' logic, anyone alleged to be involved in drug trafficking, extortion, money laundering, or robbery, is also providing support of [*sic*] services to Thieves-in-Law." *Id.* Rakhimov misapprehends the nature of corroborating evidence. It has long been established that "[w]hatever tends to make a story substantially more credible or probable corroborates it." *Associated Gen. Contractors of Am. v. Cardillo*, 106 F.2d 327, 329 (D.C. Cir. 1939). Accordingly, information that Rakhimov has engaged in the same types of criminal activities as Thieves-in-Law, and in the same geographic region as Thieves-in-Law, A.R. at 0003, 0015, 0517-20, 0565, 0698, 0700, tends to

make more credible or probable a conclusion that Rakhimov collaborates and otherwise provides material assistance to the Thieves-in-Law criminal enterprise. *Cf. United States v. Castle*, 825 F.3d 625, 629 (D.C. Cir. 2016) ("[K]nowledge of an 'individual's criminal history' can 'corroborate[ ],' but not substitute for 'objective indications of ongoing criminality.'" (quoting *United States v. Monteiro*, 447 F.3d 39, 47 (1st Cir. 2006)); *United States v. Ball*, 962 F. Supp. 2d 11, 15 (D.D.C. 2013) ("Their criminal histories corroborate that the defendants remain a danger to the community.").  Additionally, OFAC would not conclude—and, as indicated by Rakhimov's failure to identify such instances, has never concluded—that anyone engaging in criminal activity is supporting Thieves-in-Law, absent some nexus to that group, as is evident here.  Further, OFAC's assessment is entitled to particular deference given the national security dimensions of this case. *See Humanitarian Law Project*, 561 U.S. at 34-35. *Accord Trump v. Hawaii*, 138 S. Ct. 2392, 2422 (2018) ("[T]he Executive's evaluation of the underlying facts is entitled to appropriate weight, particularly in the context of litigation involving 'sensitive and weighty interests of national security and foreign affairs.'" (quoting *Humanitarian Law Project*, 561 U.S. at 33-34)).

Finally, although Rakhimov claims that he "does not necessarily challenged [*sic*] OFAC's fact-finding process," Pl.'s Opp. at 17, he nevertheless contests OFAC's findings, *see id.* at 3 (stating that OFAC's findings regarding Rakhimov's drug trafficking are "untrue"); *id.* at 11 ("[H]is alleged involvement in criminal activities . . . is false[.]").  Rakhimov, however, can point to nothing in the record to contradict OFAC's findings.  Nor does he attempt to distinguish the various cases cited by Defendants upholding OFAC's fact-finding process. *See* Defs.' Mem. at 15-16 (citing, *inter alia*, *Holy Land Found.*, 333 F.3d at 162, and *Kadi v. Geithner*, 42 F. Supp. 3d 1, 12-23 (D.D.C. 2012)).

The Court should therefore grant Defendants summary judgment on Count I of the

Amended Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II.    OFAC's Decision Comports With The Fifth Amendment

Rakhimov contends that OFAC's decision to amend his designation violated his

purported rights under the Fifth Amendment's Due Process Clause, primarily because the

administrative record contains redactions of classified information used to support OFAC's

decision.  Pl.'s Opp. at 21-32.  But as in his Amended Complaint, Rakhimov's opposition brief

fails to identify any property or presence in the United States, even though such information is

presumably known to Rakhimov.  Accordingly, the Court should reject Rakhimov's

constitutional claim out of hand, as a foreign national without sufficient contacts with the United

States cannot cloak himself in the protections of the Fifth Amendment.  Moreover, Rakhimov's

claim fails on the merits.  Not only has the D.C. Circuit made clear that OFAC may rely on

classified and law enforcement privileged information to support a designation decision, but the

unclassified and non-privileged portions of the record alone provide a sufficient explanation for

OFAC's decision.

### A.    Rakhimov Cannot Assert Constitutional Rights

As Defendants explained in their motion, Rakhimov's Amended Complaint fails to allege

the sort of "substantial connections" with the United States necessary for Rakhimov, as a foreign

national, to be entitled to the full protections of the U.S. Constitution.  *See* Defs.' Mem. at 17-18

(citing, *inter alia*, *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990), and *Johnson v.*

*Eisentrager*, 339 U.S. 763, 770-71 (1950)).

In response, Rakhimov asserts that "[c]ourts have repeatedly held that foreign nationals

may be owed constitutional protection."  Pl.'s Opp. at 30 (citations omitted).  However, the six

cases cited by Rakhimov in support of this proposition are precisely the same six cases distinguished by the Supreme Court in *Verdugo-Urquidez*. *Compare* Pl.'s Opp. at 30 *with Verdugo-Urquidez*, 494 U.S. at 271. As the Supreme Court there explained, "[t]hese cases . . . establish only that aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *Verdugo-Urquidez*, 494 U.S. at 271.

Nor has Rakhimov established such contacts. Rakhimov contends that he "has alleged that [his] property and interests in property within U.S. jurisdiction were blocked as a result of Defendants' actions." Pl.'s Opp. at 31 (citing Am. Compl. ¶ 3). But the Amended Complaint is devoid of any factual allegations that could plausibly support a finding that Rakhimov has property within the United States. The paragraph cited by Rakhimov, for example, states that "[d]ue to his designation under E.O. 13581, all of Rakhimov's property and interests in property within the United States or within the possession or control of U.S. persons, wherever located, are blocked as of February 23, 2012, and cannot be transferred, paid, exported, withdrawn, or otherwise dealt in." Am. Compl. ¶ 3. While this allegation accurately captures the legal consequences of OFAC's decision, *see* 50 U.S.C. § 1702(a)(1)(B); EO 13581, § 1(a)(ii)(B), it does not adequately establish that Rakhimov in fact has property subject to blocking. *See Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) (explaining that "conclusory statements and legal conclusions are insufficient to state a plausible basis for standing"); *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (although factual allegations in a complaint are presumed true, a court need not accept as true "a legal conclusion couched as a factual allegation"); *Tanner-Brown v. Jewell*, 153 F. Supp. 3d 102, 108 (D.D.C. 2016), *aff'd sub nom. Tanner-Brown v. Zinke*, 709 F. App'x 17 (D.C. Cir. 2017) ("When assessing standing at the motion to dismiss

stage, the Court will 'accept the well-pleaded factual allegations as true and draw all reasonable

inferences from those allegations in the plaintiff's favor,' but will 'not assume the truth of legal

conclusions, nor . . . accept inferences that are unsupported by the facts set out in the

complaint.'" (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)). Similarly,

Defendants' explanation that OFAC's action had the legal effect of "blocking all of Rakhimov's

property and interests in property in the United States or in the possession or control of a U.S.

person," Defs.' Mem. at 1, does not constitute a concession that Rakhimov in fact has property

subject to blocking, as Rakhimov suggests, *see* Pl.'s Opp. at 31-32. *See also Gardner v. United

States*, 211 F.3d 1305, 1310 (D.C. Cir. 2000) ("[P]arties may not waive or concede a federal

court's subject matter jurisdiction.").

Rakhimov's pleading deficiencies are all the more pronounced given the cross-motions

for summary judgment now pending before the Court. To proceed with his Fifth Amendment

claim, Rakhimov should be able to identify portions of the record that support a finding of

sufficient contacts with the United States. *Cf. Humane Soc'y of the U.S. v. Perdue*, 935 F.3d

598, 602 (D.C. Cir. 2019) ("Now, on summary judgment, the plaintiffs must prove injury in fact

with 'specific facts' in the record."). Yet he makes no effort to do so, Pl.'s Opp. at 30-32, likely

because the record contains no such evidence.

Rakhimov attempts to compensate for these critical omissions by claiming that *Verdugo-

Urquidez* "requires the Court to take a more scrutinizing look at whether Rakhimov's purported

connections to the United States merit constitutional protection." *Id.* at 31. But even if so, that

"scrutinizing look" must be guided by Circuit precedent applying *Verdugo-Urquidez*, which to

date has recognized constitutional protections for foreign nationals only if they had substantial

connections with the United States, defined as presence or property in this country. *People's*

*Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 22 (D.C. Cir. 1999) ("*People's Mojahedin Org. I*") ("A foreign entity without property or presence in this country has no constitutional rights, under the due process clause or otherwise."); *Nat'l Council of Resistance of Iran*, 251 F.3d at 201-02 (holding that entity was entitled to Fifth Amendment protections because it "ha[s] come within the territory of the United States and developed substantial connections with this country," as evidenced by its "overt presence within the National Press Building in Washington, D.C." and its "claim[] [of] an interest in a small bank account");[1] *32 Cty. Sovereignty Comm. v. Dep't of State*, 292 F.3d 797, 799 (D.C. Cir. 2002) (rejecting argument that entities had constitutional rights, where they did not establish that they "possessed any controlling interest in property located within the United States, nor do they demonstrate any other form of presence here"); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("It is well established that" the "Fifth Amendment's protections" are "unavailable to aliens outside of our geographic borders.").  As Rakhimov has failed to establish any presence or property within the country—and has likewise failed to demonstrate alternative bases for invoking the Fifth Amendment—the Court should not entertain his due process claim.

For the same reason, Rakhimov cannot persuasively argue that he may assert constitutional rights because mere property ownership entitles a plaintiff to do so.  *See* Pl.'s Opp. at 32; *see also id.* at 30.  *Kadi*—the sole case that Rakhimov relies on, *id.*—confirms that property ownership is relevant only insofar as it pertains to analyzing whether a SDN has

---

[1] The court in *National Council of Resistance of Iran* left open the possibility that "aliens who have entered the territory of the United States and developed connections with this country but not substantial ones" may avail themselves of the Fifth Amendment.  251 F.3d at 202.  However, it declined to specify under what conditions that standard could be met.  *See id.*  And in any event, Rakhimov cannot rely on this dicta, as the record does not support a finding that he has either entered this territory or developed any connections with the United States whatsoever.

substantial connections with the United States.  *Kadi*, 42 F. Supp. 3d at 25-26.  Moreover,

Rakhimov cannot avail himself of the standard he has proposed; for the reasons described above,

neither the Amended Complaint nor the administrative record permits a conclusion that

Rakhimov has any property within the United States.

The Court should likewise reject Rakhimov's assertion that "whether [he] has property

blocked in the United States or by a U.S. person, wherever located, may be an issue fit for

discovery[.]"  Pl.'s Opp. at 32 n.3.  Rakhimov has cross-moved for summary judgment—

indicating he believes "there is no genuine dispute as to any material fact," Fed. R. Civ. P.

56(a)—and he has not made a request for discovery pursuant to Rule 56(d).  Rakhimov also

elides the fact that "[i]n this Circuit, discovery is normally unavailable in an APA case, 'except

when there has been a strong showing of bad faith or improper behavior or when the record is so

bare that it prevents effective judicial review.'"  *Friends of The Earth v. U.S. Dep't of Interior*,

236 F.R.D. 39, 42 (D.D.C. 2006) (quoting *Commercial Drapery Contractors v. United States*,

133 F.3d 1, 7 (D.C. Cir. 1998)); *see also* Pl.'s Opp. at 13 (acknowledging that "[w]hen a court

reviews agency action under the APA, '[t]he entire case on review is a question of law, and only

a question of law'" (quoting *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014), *aff'd*,

793 F.3d 106 (D.C. Cir. 2015))).  And as a practical matter, Rakhimov should not need discovery

to know whether he has blocked property.

Rakhimov has therefore not demonstrated that he can assert any rights under the

Constitution, and the Court should dismiss his Fifth Amendment claim for lack of subject-matter

jurisdiction pursuant to Rule 12(b)(1).

**B.      Rakhimov's Due Process Claim Fails On The Merits**

Even if the Court were to reach the merits of Rakhimov's Fifth Amendment claim, it

should reject his argument that OFAC's procedures fail to satisfy due process.  According to

Rakhimov, Defendants violated his purported due process rights because they considered

classified and law enforcement privileged information but did not utilize "other procedural

safeguards" to inform Rakhimov of the basis for OFAC's amended designation decision.  Pl.'s

Opp. at 21-29.  Such safeguards, Rakhimov contends, include requiring OFAC to produce

unclassified summaries of classified information and allowing cleared counsel to access the

protected materials.  *Id.*  This argument, however, ignores relevant caselaw and the actual

process that Rakhimov received.

**1.      Due Process Does Not Require OFAC To Produce Unclassified
          Summaries Or To Grant Cleared Counsel Access To The Classified
          Record**

As an initial matter, Rakhimov's insistence that OFAC disclose "all of the reasons for"

OFAC's amended designation decision, Pl.'s Opp. at 23, must give way to the text of IEEPA,

which expressly permits the Executive Branch to rely on classified information and submit that

information to a court for *ex parte* and *in camera* review, 50 U.S.C. § 1702(c).  That provision,

moreover, does not require the government to summarize or allow third parties to access

classified information in connection with an administrative or judicial proceeding.  *See id.*  In

other words, IEEPA contemplates that the government may designate a person based on

classified information that the SDN never sees.  *Id.*

Additionally, contrary to Rakhimov's argument, the D.C. Circuit has never concluded

that OFAC must provide a SDN "all of the reasons supporting OFAC's determination."  *See* Pl.'s

Opp. at 23; *see also id.* at 26-29 (similarly suggesting that OFAC must disclose each and every

reason for its decision).  Instead, and consistent with the text of IEEPA, the Court of Appeals has repeatedly held that there is no due process violation when a federal agency makes a decision based on classified information not disclosed to a foreign national, and that it is entirely proper for a court to take this classified information into account during its *ex parte* and *in camera* review of the agency's action.  *See* Defs.' Mem. at 21 (citing cases).  For instance, in *Holy Land Foundation*, the D.C. Circuit held that due process permitted the government, pursuant to IEEPA, to rely on classified information submitted *ex parte* and *in camera* to support the designation of a domestic entity as a SDN, finding unpersuasive the argument "that due process prevents its designation based upon classified information to which it has not had access[.]"  333 F.3d at 164.  And although not in the IEEPA context, *Jifry v. FAA* is particularly instructive; there, the D.C. Circuit held that the government satisfied the notice requirements of due process by informing foreign pilots that their airmen certificates had been revoked based on TSA's determination that they were a "security threat."  370 F.3d 1174, 1183-84 (D.C. Cir. 2004).  The court reached its decision even though the revocation notice "did not include the factual basis for" that determination, "which was based on classified information," and plaintiffs had argued that "without knowledge of the specific evidence on which TSA relied, they [were] unable to defend against the charge that they are security risks."  *Id.* at 1178, 1184 (noting that the D.C. Circuit "rejected the same argument" that an agency is not permitted to rely on undisclosed classified information with respect to the designation of foreign terrorist organizations in *Nat'l Council of Resistance of Iran*, 251 F.3d at 208, and *People's Mojahedin Org. of Iran v. Dep't of State*, 327 F.3d 1238, 1241 (D.C. Cir. 2003) ("*People's Mojahedin Org. II*")).

The D.C. Circuit has also made clear that "'due process require[s] the disclosure of *only* the unclassified portions of the administrative record.'"  *Id.* (quoting *People's Mojahedin II*, 327

15

F.3d at 1242); *see also Nat'l Council of Resistance of Iran*, 251 F.3d at 208-09 (holding that under the Due Process Clause, the agency "need not disclose the classified information to be presented *in camera* and *ex parte* to the court," and that "[t]his is within the privilege and prerogative of the executive, and we do not intend to compel a breach in the security which that branch is charged to protect").  Thus the relevant question is not whether OFAC has provided Rakhimov "all of the reasons supporting OFAC's determination[,]" *see* Pl.'s Opp. at 23, but rather whether OFAC has disclosed the unclassified record, and whether that record provided Rakhimov "a basis from which to understand his designation, and thereby offer rebuttal arguments and evidence in response[,]" *Zevallos*, 10 F. Supp. 3d at 131.  For the reasons discussed in Defendants' motion and Section II.B.2, *infra*, OFAC has satisfied this standard.[2]

Moreover, the specific "alternative means" proposed by Rakhimov, Pl.'s Opp. at 28— requiring OFAC to produce unclassified summaries and to grant cleared counsel access to the classified materials, *id.* at 22-23, 28-29—have never been mandated by any court in this Circuit considering a designation action.  Instead, courts have observed that while "unclassified summaries of classified information on which an agency relied may be helpful to litigants, they are not required." *FBME Bank Ltd. v. Lew*, 125 F. Supp. 3d 109, 119 n.2 (D.D.C. 2015).  Rakhimov also has no answer to the decisions cited by Defendants that have rejected requests by a plaintiff for his counsel to access classified materials.  *Compare* Defs.' Mem. at 23 *with* Pl.'s Opp. at 29.  Instead, Rakhimov seems to confirm that he does not even have cleared counsel.

---

[2] Rakhimov focuses his arguments on the redaction of classified information.  Pl.'s Opp. at 21-29.  Insofar as he raises the same arguments with respect to redactions of law enforcement privileged information, *see id.*, such arguments are similarly unpersuasive.  *See Joumaa*, 2019 WL 1559453, at *10 n.14 (holding plaintiff "has no right to classified evidence that OFAC relies on for his designation, nor to law-enforcement privileged evidence OFAC relies on when he fails to assert any distinction between the two." (citing *Fares v. Smith*, 901 F.3d 315, 323-24 (D.C. Cir. 2018))).

Pl.'s Opp. at 29 ("[U]ndersigned counsel has previously obtained security clearances . . . ."). Nor can he demand that the government provide his counsel a security clearance. *Dep't of Navy v. Egan*, 484 U.S. 518, 528 (1988). And Rakhimov's assurance that his counsel "would be here bound by U.S. law . . . not to divulge or disseminate classified information[,]" Pl.'s Opp. at 29, is insufficient. *See, e.g.*, *Ellsberg v. Mitchell*, 709 F.2d 51, 61 (D.C. Cir. 1983) ("[O]ur nation's security is too important to be entrusted to the good faith and circumspection of a litigant's lawyer (whose sense of obligation to his client is likely to strain his fidelity to his pledge of secrecy) or to the coercive power of a protective order.").

Perhaps in recognition of these authorities, Rakhimov contends that he "does not argue that provision of either the unclassified summary or Rakhimov's counsel's access to the unredacted record are [*sic*] required." Pl.'s Opp. at 28. Rakhimov, however, overlooks the relief requested in his own Amended Complaint, which "asks the Court to . . . [o]rder Defendants to provide Rakhimov's cleared counsel access to the full unredacted administrative record created in support of OFAC's designation of Rakhimov under E.O. 13581, or a sufficiently detailed unclassified summary of the redacted portions of the record[.]" Am. Compl. at 15. Thus Rakhimov cannot escape from a conclusion that his requested relief is extraordinary and should be denied.

Additionally, the precedent invoked by Rakhimov is inapposite. Rakhimov relies primarily on *Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018). Pl.'s Opp. at 21-23, 25-27, 29. But the D.C. Circuit in that case did not require OFAC to disclose "all of the reasons" for its designation decisions, *id.* at 23; rather, the court in *Fares* affirmed the ability of the Executive Branch to rely on classified and law enforcement privileged information that is not disclosed to a designated individual, *see Fares*, 901 F.3d at 324. Further, while that court, in dicta, *permitted*

the reliance on summaries of protected information to support a designation, it did not hold that

such summaries are *required* by the Due Process Clause. *Id.* at 324-25.   Similarly, the court in

*Fares* noted, again in dicta, that "effective judicial review may necessitate examination of the

full administrative record *in camera*, either *ex parte* or with the designee's lawyer present as

cleared counsel (able to verify the government's grounds but not report them back to the client),"

but it did not specify when a court would be unable to effectively examine the record on its own,

and it did not in fact order that the plaintiffs' counsel be permitted access to the record.   *Id.* at

322-23.   And Rakhimov's suggestion that, per *Fares*, "[d]isclosure of some but not all of the

allegations against [a designee] impairs their ability to fully clear their names for delisting[,]"

Pl.'s Opp. at 23, 27, is at best inaccurate; rather, the D.C. Circuit, in explaining why the

plaintiffs' legal theory was unusual in the sanctions context, stated that "[d]esignees can contest

that agency disclosure of some but not all of the allegations against them impairs their ability to

fully clear their names for delisting, leaving them 'stumbl[ing] towards a moving target.'"

*Fares*, 901 F.3d at 322 (quoting *Zevallos*, 793 F.3d at 118).   An observation about what a

designated individual may argue plainly does not establish a bright-line rule that OFAC must

disclose each and every reason for its designation decisions.

   Nor did the district court in *Zevallos*, as Rakhimov contends, hold that unclassified

summaries of classified information are required under the Due Process Clause.   *See* Pl.'s Opp.

at 22 (citing *Zevallos*, 10 F. Supp. 3d at 117).   Rather, the court merely stated, relying on the

"helpful analogy" of IEEPA designations, that due process "required OFAC to promptly provide

the unclassified administrative record on which it relied in taking its blocking action."   *Zevallos*,

10 F. Supp. 3d at 129.   Here, Rakhimov does not claim that OFAC failed to promptly provide

him the unclassified record.  *See* Pl.'s Opp. at 21-29.  Thus *Zevallos* is of no assistance to Rakhimov.

Rakhimov fares no better in relying on the Ninth Circuit's decision in *Al Haramain Islamic Foundation, Inc. v. U.S. Department of Treasury*, 686 F.3d 965 (9th Cir. 2012).  *See* Pl.'s Opp. at 22-23, 26, 28.  While that court opined on the potential utility of unclassified summaries or access for cleared counsel, *Al Haramain*, 686 F.3d at 982, it did not hold that such measures are always required; in fact, the Ninth Circuit acknowledged that "an unclassified summary may not be possible because, in some cases, the subject matter itself may be classified and cannot be revealed without implicating national security." *Id.* at 983.  Moreover, the persuasive value of the Ninth Circuit's dicta is limited, given that (1) *Al Haramain*—unlike this case—involved a domestic entity, and thus due process protections that do not apply here, *id.* at 979; and (2) the Ninth Circuit's due process analysis conflicts with the aforementioned decisions in this Circuit upholding the use of classified information, where the D.C. Circuit did not suggest that due process requires the government to summarize such information, *see Jifry*, 370 F.3d at 1183-84; *Holy Land*, 333 F.3d at 164; *Nat'l Council*, 251 F.3d at 208-09.  Additionally, *Al Haramain* involved a "significantly untimely and incomplete notice" that provided "only one of three reasons for [the agency's] investigation and designation," *Al Haramain*, 686 F.3d at 986, whereas here OFAC has provided Rakhimov sufficient information from which to understand the basis for OFAC's decision.  *See* Defs.' Mem. at 19-24 & Section II.B.2, *infra*.  Rakhimov is thus "unlike the plaintiff[] in *Al Haramain* . . . who w[as] left in the dark as to the reasons for [its] designation[]."  *See Fares*, 249 F. Supp. 3d at 127; *see also Zevallos*, 793 F.3d at 117 (distinguishing *Al Haramain* on similar grounds).

**2.      OFAC Has Provided Rakhimov A Basis From Which To Understand His Amended Designation**

Yet the Court need not reach the question of whether unclassified summaries are always required or whether OFAC must employ "other alternative means" when relying on classified information, Pl.'s Opp. at 28, as the administrative record provided to Rakhimov more than adequately apprises him of the basis for OFAC's decision to amend his designation.  Rakhimov's arguments to the contrary are without merit.

First, Rakhimov claims that OFAC's evidentiary memorandum is too heavily redacted to allow him to understand the reasons for his amended designation.  *Id.* at 23-27.  But that memorandum is redacted only insofar as it contains classified or otherwise protected information, *see* A.R. at 0001-17, which, as discussed above, OFAC need not disclose. Additionally, the unclassified evidence provided to Rakhimov—including that disclosed in OFAC's press release, *id.* at 0700—explains OFAC's determination that Rakhimov has "materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, the [Thieves-in-Law]," *id.* at 0002; *see also* EO 13581, § 1(a)(ii)(B).  Specifically, OFAC notified Rakhimov of its findings that he "collaborated with Thieves-in-Law on business[,]" A.R. at 0012, and that he "assisted Thieves-in-Law by providing warning of law enforcement issues, arranging meetings, and addressing other problems," *id.* at 0700.  OFAC also apprised Rakhimov that it considered evidence regarding Rakhimov's involvement in criminal activities, *id.* at 0015-17, 0495-96, 0517-20, 0565, 0700, further corroborating the evidence of Rakhimov's material assistance to Thieves-in-Law.  OFAC identified the types, dates, and locations of such activities.  *See, e.g.*, *id.* at 0015, 0527, 0700 (describing Rakhimov's extensive heroin trafficking network as of 2014); *id.* at 0015, 0565 (evidence from 2013 that Rakhimov was wanted in Uzbekistan on charges of extortion, forgery,

and money laundering).  Thus, OFAC has provided Rakhimov "with a basis from which to

understand his designation," *Zevallos*, 10 F. Supp. 3d at 131.

      The D.C. Circuit's decision in *Jifry* confirms as much.  To reiterate, the court in that case

held that the government satisfied the notice requirements of due process by informing certain

pilots, all foreign nationals, that their airmen certificates had been revoked based on TSA's

determination that they were a "security threat."  370 F.3d at 1184.  In reaching its conclusion,

the court declined to require the agency to disclose the reasons for the determination, which were

classified.  *Id.* at 1183-84.  Nor did the court carve out an exception for "critical information,"

Pl.'s Opp. at 27, or information "most material to the[] . . . action," *id.* at 25-26, or otherwise

require the agency to utilize the "alternative means" envisioned by Rakhimov, *id.* at 22-23, 28-

29; instead, the court observed that "[i]n light of the governmental interests at stake and the

sensitive security information, substitute procedural safeguards may be impracticable, and in any

event, are unnecessary under our precedent."  *Jifry*, 370 F.3d at 1183.  Thus the findings

conveyed by OFAC—plainly more detailed than a finding that a pilot poses a security threat—

warrant a conclusion that Rakhimov has "received all the process that [he is] due under [binding]

precedent."  *See id.* at 1184.[3]

      Rakhimov's argument that he has been denied "a meaningful opportunity to rebut the

findings made by the agency in support of its determination," Pl.'s Opp. at 24; *see also id.* at 21,

26, 29, is also unavailing.  Insofar as this argument is coextensive with Rakhimov's claim that

---

[3] In referring the Court to pages 0002-17 of the administrative record and the exhibits cited
therein, Defs.' Mem. at 6 n.4, Defendants have not, as Rakhimov suggests, "confirm[ed] the
inadequacy of the notice Rakhimov has received," Pl.'s Opp. at 27.  Defendants maintain the
notice provided to Rakhimov was more than adequate for the reasons described above, and
directing the Court to specific pages within a record spanning more than 700 pages does not
undermine that position.

information in the record is too heavily redacted, it fails for the reasons described above.

Further, Rakhimov's acknowledgment that he has been able to submit information to OFAC

"that Rakhimov believed would demonstrate that any conceivable basis for the designation had

been negated," Am. Compl. ¶ 20, also counsels against a finding that OFAC has violated any due

process rights that he may enjoy.  *See Zevallos*, 793 F.3d at 116-17 (explaining that designated

individual's ability to seek delisting through an administrative process, including by submitting

information for OFAC's consideration, evidenced a meaningful opportunity to be heard); *see*

*also Kadi*, 42 F. Supp. 3d at 29 ("[N]otice and a meaningful opportunity to be heard are satisfied

by the provision of a post-deprivation administrative remedy and the opportunity to submit

written submissions to OFAC, even where (as here) the initial designation provided no notice or

opportunity to be heard." (citing *Holy Land Found.*, 333 F.3d at 163-64)).

Rakhimov next claims that the Court should not "defer to OFAC's conclusion that

evidence of Rakhimov's criminal activity corroborates evidence of his material assistance to

Thieves-in-Law."  Pl.'s Opp. at 24 (citing Defs.' Mem. at 14-15); *see also id.* at 25 ("Defendants

. . . have not presented any evidence supporting their allegation that Rakhimov collaborates with

the Thieves-in-Law that could be corroborated.").  But Rakhimov here is conflating his claim

under 5 U.S.C. § 706(2)(A) with his claim under the Fifth Amendment; and as Defendants have

explained, the Court should defer to OFAC's conclusion and find that the amended designation

decision is rational under the governing APA standard.  *See* Defs.' Mem. at 14-15 (citing cases).

The question of whether Rakhimov received due process—to the extent he is entitled to any,

which he is not—turns instead on whether OFAC has provided him "a basis from which to

understand his designation," *Zevallos*, 10 F. Supp. 3d at 131, which OFAC has.

Nonetheless, any error associated with the notice provided by OFAC would be harmless, given that the administrative record amply supports OFAC's decision.  *See Zevallos*, 793 F.3d at 117.  In *Zevallos*, the D.C. Circuit rejected a designated individual's due process arguments, which included a claim that "Treasury waited far too long before deciding his request and failed to communicate with him during these delays."  *Id.*  The court found this argument unpersuasive on the merits.  *Id.*  It also explained that "if there was error, it was harmless," because "[w]e have already held that the administrative record supports Treasury's conclusion that Zevallos should remain designated, and Zevallos does not suggest that reviewing his delisting request at a faster pace would have changed that outcome."  *Id.*  Similarly, even if OFAC should have provided additional information related to its amended designation decision, the fact remains that the administrative record sets forth a rational basis for OFAC's decision, and the Court should therefore not vacate that agency action.  *See id.* at 118 ("[B]ecause no procedural error Zevallos alleges played a role in the denial of his delisting request, none provides a basis to vacate Treasury's determination.").

Thus Rakhimov can hardly complain that he has been "left in the dark as to the reasons for [his] designation[], and . . . could not meaningfully refute the evidence against [him]."  *Zevallos*, 10 F. Supp. 3d at 131.  Nor can he plausibly claim that he "has been forced to stumble towards a moving target."  *Zevallos*, 793 F.3d at 118.  Accordingly, even if the Court were to reach the merits of Count II of the Amended Complaint, it should grant Defendants' motion to dismiss pursuant to Rule 12(b)(6), or grant summary judgment in favor of Defendants pursuant to Rule 56.

**III.    OFAC Has Provided Rakhimov Sufficient Notice Under The APA**

In Count III of his Amended Complaint, Rakhimov recasts his notice-based argument as a claim under the APA, suggesting that he is "entitle[d] . . . to know the reasons for the agency's action against him," including classified and privileged information.  Pl.'s Opp. at 32-35. However, a plaintiff is not entitled to access classified and law enforcement privileged materials simply because he has alleged a cause of action under 5 U.S.C. § 706.  *See, e.g.*, *Holy Land Found.*, 333 F.3d at 162, 164 (rejecting claim that designation decision was arbitrary and capricious, and affirming that agency need not disclose classified information); *Sulemane v. Mnuchin*, Civ. A. No. 16-1822 (TJK), 2019 WL 77428, at *7 (D.D.C. Jan. 2, 2019) ("The [APA] does not require OFAC to provide Sulemane the classified or law enforcement-privileged information supporting those grounds [for denying his delisting petition.]"); *Kadi*, 42 F. Supp. 3d at 24 (holding substantial evidence supported OFAC's decision, and affirming that designated individual was not entitled to classified information).

Instead, the APA requires only that an agency "'examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made' to allow [a reviewing court] to evaluate the agency's decision-making process."  *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 214 (D.C. Cir. 2013) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  As explained in Section I, *supra*, "an agency's decision [need not] be a model of analytic precision to survive a challenge," and "[a] reviewing court will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  *Frizelle*, 111 F.3d at 176 (citations omitted).  OFAC has more than met this requirement, for the reasons discussed in Section II.B.2, *supra*.

Further, contrary to Rakhimov's assertion, Pl.'s Opp. at 34-35, he may still meaningfully participate in the administrative process OFAC has established for designated individuals seeking removal from the SDN List.  For instance, Rakhimov could submit information related to whether he knows or associates with any members of Thieves-in-Law, or whether he has ever knowingly collaborated with a member of Thieves-in-Law, including with respect to business matters.  *See* A.R. at 0700.  He may also submit information to establish that reporting regarding his criminal activities, which OFAC found to be corroborating evidence, is unreliable.  *See id.* at 0015-17.  Or he can explain that any association with Thieves-in-Law has ceased.  *See* 31 C.F.R. § 501.807 (SDN seeking delisting may "assert that the circumstances resulting in the designation no longer apply").

Indeed, Rakhimov acknowledges that he has already sought to avail himself of this administrative process.  *See* Am. Compl. ¶ 20.  If he believes that OFAC's ultimate decision on his pending delisting petition is flawed, he may seek appropriate relief at that time.  For purposes of this lawsuit, however, his speculation that "it could be the case that Rakhimov's submissions to OFAC thus far have not addressed any of OFAC's findings that Rakhimov has provided support or services to the Thieves-in-Law," Pl.'s Opp. at 34, does not warrant a conclusion that OFAC's 2017 decision should be set aside, *cf. Zevallos*, 793 F.3d at 117.

The Court should therefore dismiss Count III of the Amended Complaint pursuant to Rule 12(b)(6) or, in the alternative, grant summary judgment to Defendants under Rule 56.

## CONCLUSION

For the foregoing reasons, the Court should deny Rakhimov's cross-motion and grant Defendants' motion to dismiss or, in the alternative, for summary judgment, and enter judgment in favor of Defendants on all claims.

Dated February 20, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director

*/s/Stuart J. Robinson*
STUART J. ROBINSON
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6635
Fax: (415) 436-6632
Email: stuart.j.robinson@usdoj.gov
Cal. Bar No. 267183

Counsel for Defendants