## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**GAFUR-ARSLANBEK AKHEMDOVICH**
**RAKHIMOV,**

      **Plaintiff,**

      **v.**

**ANDREA M. GACKI,** *et al.*,

      **Defendants.**

        **Civil Action No. 19-2554 (JEB)**

### MEMORANDUM OPINION

The United States believes that Plaintiff Gafur Rakhimov has been a major player in Uzbekistan's organized-crime networks and also materially assisted an international criminal organization with the oxymoronic name of "Thieves-in-Law." Defendant Office of Foreign Assets Control thus added him to the agency's Special Designated Nationals and Blocked Persons list, a designation that froze any assets he might retain in the United States. Plaintiff has sought the administrative record underlying that designation while also contesting his addition to the SDN list. The Government provided him with that administrative record but in redacted form, explaining that the remainder consisted of classified information.

Rakhimov now challenges the agency's substantive determination that he collaborated with Thieves-in-Law as well as its procedural decision to redact the evidence in support of his designation. He claims that his inability to review the classified evidence violates both his constitutional right to due process and the Administrative Procedure Act. The Court will reject Plaintiff's due-process argument because he has not adequately established substantial ties to the United States and therefore cannot avail himself of its constitutional protections. Turning to the

APA claims, the Court finds that the agency's initial designation of Plaintiff was reasonable and that his procedural challenges are currently unavailing.  Rakhimov, however, "should not 'confuse a single failure with a final defeat.'"  Crawford v. Barr, No. 17-798, 2019 WL 6525652, at *1 (D.D.C. Dec. 4, 2019) (quoting F. Scott Fitzgerald, Tender is the Night 157 (Wordsworth ed. 1995)).  He is instead free to pursue the available administrative-reconsideration process and to obtain judicial review of Defendants' ensuing decision.

I.     **Background**

   A.  Statutory Scheme

   Since our nation's infancy, many of its leaders have viewed economic sanctions as "the most likely means of obtaining our objects without war."  James Madison, "Political Observations," National Archives (Apr. 20, 1795).  In 1977, amidst the Cold War, Congress passed the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701 *et seq.*, which grants the President broad discretion to impose economic sanctions on foreign entities and individuals in the event of a national emergency.  See Fulmen Co. v. Office of Foreign Assets Control, No. 18-2949, 2020 WL 1536341, at *1 (D.D.C. Mar. 31, 2020) (citing 50 U.S.C. § 1702(a)(1)(B)); see also Dames & Moore v. Regan, 453 U.S. 654, 677 (1981) ("[T]he IEEPA delegates broad authority to the President to act in times of national emergency.").  The President may declare such a national emergency "when an extraordinary threat to the United States arises that originates in substantial part in a foreign state."  Holy Land Found. for Relief & Dev. v. Ashcroft, 333 F.3d 156, 159 (D.C. Cir. 2003).

   In 2011, President Obama issued Executive Order 13581, "declar[ing] a national emergency to deal with" "transnational criminal organizations," which had become "increasingly sophisticated and dangerous to the United States" in ways that threatened its "national security,

foreign policy, and economy." E.O. 13581 (76 Fed. Reg. 44,757) (July 24, 2011). The Order authorizes the Secretary of the Treasury, in consultation with the Attorney General and the Secretary of State, to designate persons who have "materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to [a significant transnational criminal organization]" in order to "block" those persons' "property and interests in property." Id. The Order also authorizes the Secretary of the Treasury to "take such actions, including the promulgation of rules and regulations . . . to carry out the purposes of [E.O. 13581]." Id. The Secretary has delegated this implementation authority to OFAC. See 31 C.F.R. § 590.802.

A person designated as a sponsor of an international criminal organization by OFAC is added to the SDN list, id. § 501.807(a), "and all their assets in the United States or under the control of any person who is in the United States are 'blocked,' or effectively frozen." Zevallos v. Obama, 793 F.3d 106, 110 (D.C. Cir. 2015) (alteration and citation omitted) (quoting 21 U.S.C. § 1904(b)). A designee then may "seek administrative reconsideration" of his designation and request to be removed. See 31 C.F.R. § 501.807. "A request for reconsideration — also sometimes called a delisting request — may include arguments or evidence rebutting Treasury's 'basis . . . for the designation.'" Zevallos, 793 F.3d at 110 (quoting 31 C.F.R. § 501.807). OFAC reviews these requests and then "provide[s] a written decision to the blocked person." 31 C.F.R. § 501.807(d). "A designated person can request delisting as many times as he likes." Zevallos, 793 F.3d at 110 (citing 31 C.F.R. § 501.807).

Beyond this administrative process, a designee may pursue several opportunities for judicial review. Generally, "[i]f OFAC denies a request for reconsideration, the blocked person may challenge that determination under the APA" in federal court. See Sulemane v. Mnuchin,

No. 16-1822, 2019 WL 77428, at *2 (D.D.C. Jan. 2, 2019) (citing caselaw). In some instances, however, parties bypass the administrative-delisting process altogether and immediately challenge the agency's designation. See, e.g., Fares v. Smith, 901 F.3d 315, 317, 320 (D.C. Cir. 2018) (considering both constitutional and APA claims brought following initial designation); Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury, 686 F.3d 965, 974 (9th Cir. 2012) (same).

    B.  Factual Background

    In February 2012, OFAC added Rakhimov to the SDN list after concluding that he was a "key member" of an international crime syndicate known as the "Brothers' Circle." Treasury Dep't, Press Release of Feb. 23, 2012, http://www.treasury.gov/press-center/press-releases/Pages/tg1430.aspx. Over five years later as his activities developed, OFAC amended Rakhimov's designation, concluding that he had "materially assisted, sponsored, or provided financial material, or technological support for, or goods and services to" a different international criminal organization, known as "Thieves-in-Law." See ECF No. 21 (Administrative Appendix) at 2. Thieves-in-Law operates across the globe, engaging in money laundering, extortion, bribery, robbery, and drug trafficking, among other illicit pursuits. Id. at 2, 698. OFAC explained in a press release that "Rakhimov has collaborated with Thieves-in-Law on business, as well as assisted Thieves-in-Law by providing warning of law enforcement issues, arranging meetings, and addressing other problems." Dep't of Treasury, Press Release of Dec. 22, 2017, http://home.treasury.gov/news/pressreleases/sm0244. OFAC also concluded that beyond his specific connection to Thieves-in-Law, Rakhimov is "one of Uzbekistan's leading criminals." Id.

After receiving notice of his amended designation, Rakhimov attempted to challenge it. In August 2018, he requested the rescission of his designation while also seeking the administrative record relied upon by the agency in reaching that decision.  See ECF No. 1 (Complaint), ¶¶ 4, 18.  The following month, he provided submissions to OFAC in support of a delisting request.  Id., ¶ 21.  OFAC next issued Plaintiff a questionnaire seeking information relevant to reconsideration of his designation.  Id., ¶¶ 25–28.  He responded to that questionnaire, while continuing to pursue the administrative record underlying that designation.  Id., ¶¶ 26–33; see also ECF No. 10 (Amended Complaint), ¶ 27.  OFAC then sent Rakhimov a second questionnaire in conjunction with its reconsideration decision.  Id., ¶ 28.

Believing that he could not adequately challenge the agency's designation without access to the administrative record, Plaintiff requested a temporary stay of his delisting request and the immediate disclosure of the record in June 2019.  Id., ¶ 29.  OFAC granted the stay but did not otherwise reply.  Id., ¶¶ 29–31.  On August 23, 2019, Rakhimov thus filed suit in this Court arguing, inter alia, that OFAC's failure to provide him with the administrative record underlying his designation violated the APA.  See Compl., ¶¶ 41–45.  In response, Defendants compiled and disclosed the record.  See Am. Compl., ¶ 32.

Such disclosure, however, did little to assuage Rakhimov's concerns, as much of the most damaging material was redacted.  To explain in more detail, the administrative record includes a 17-page evidentiary memorandum that summarizes the agency's evidence and conclusions, along with 89 exhibits, which consist of, e.g., governmental memoranda, news articles, and book excerpts.  See A. 18–22.  Section I provides an "Introduction"; Section II supplies an extensive "Background [on the] Thieves-in-Law"; Section III  provides detailed information concerning Rakhimov; and Section IV, entitled "Basis for Designation," outlines a summary of the agency's

"reason[s] to believe that [Plaintiff] has materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, the [Thieves-in-Law]."  Id. at 1–12.  The entirety of the nine paragraphs within Section IV's first subsection, entitled "Gafur Rakhimov collaborates with THIEVES," is redacted.  Id. 12–15.  The next subsection explains the agency's conclusion that Rakhimov is "involved with criminal activities."  Id. at 15–17.  This subsection includes citations to several exhibits, including news articles describing Plaintiff as "one of the four or five most important people in the heroin trade in the world" and his role in helping Russia illegally secure the privilege of hosting the 2014 Winter Olympics.  Id. at 15.

On December 13, 2019, Plaintiff filed an Amended Complaint in response to OFAC's disclosure of the redacted administrative record.  Count I states that OFAC's designation "was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of the APA because the "information assembled and rationalized by OFAC does not provide reason to believe that he meets the criteria for designation under that authority."  Am. Compl., ¶¶ 47–50.  Count II asserts that Defendants' failure to provide Plaintiff with sufficient notice of the reasoning behind its designation violated his due-process rights guaranteed by the Fifth Amendment to the United States Constitution.  Id., ¶¶ 51–55.  Finally, Count III alternatively presents this notice claim as an APA challenge, asserting that OFAC's designation was "not in accordance with the law" and failed to observe the "procedure required by law" because OFAC did not "provide Plaintiff with adequate and fair notice of the information and reasoning relied upon to support their designation."  Id., ¶¶ 56–60.  Notably, with his sights set on the present suit, Plaintiff requested and received a stay of his administrative request for reconsideration.  Id., ¶ 30.

Rakhimov seeks both declaratory and injunctive relief.  Primarily, he requests an order declaring that his designation was invalid and enjoining it.  Id. at 14.  He also requests that the Court require OFAC to "disclose a fully and sufficiently detailed statement of the reasons as to OFAC's decision to designate Rakhimov under E.O. 13581" or to "provide Rakhimov's cleared counsel access to the full unredacted administrative record created in support of OFAC's designation."  Id. at 15.  Defendants have filed a Motion to Dismiss Plaintiff's Amended Complaint or, in the alternative, for Summary Judgment.  Plaintiff opposes that Motion while filing a Cross-Motion for Summary Judgment.  Having conducted *in camera* review of the classified administrative record, the Court is now prepared to address the Motions.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted).  For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Rule 12(d) authorizes the court to treat a Rule 12(b)(6) motion as a motion for summary judgment under Rule 56 where the defendants rely on matters outside the pleadings, provided that all parties have a reasonable opportunity to present all material pertinent to the motion.  See Fed. R. Civ. P. 12(d).  Although styled as Cross-Motions for Summary Judgment, the submissions in this case, in part, seek the Court's review of an administrative decision.  The standard set forth in Rule 56(c), therefore, does not apply to the APA counts because of the

limited role of a court in reviewing the administrative record.  See Sierra Club v. Mainella, 459 F.Supp.2d 76, 89–90 (D.D.C. 2006).  "[W]hen a party seeks review of agency action under the APA, . . . the district judge sits as an appellate tribunal."  Rempfer v. Sharfstein, 583 F.3d 860, 865 (D.C. Cir. 2009) (quoting Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001)).

The Administrative Procedure Act "sets forth the full extent of judicial authority to review executive agency action for procedural correctness."  FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009).  It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  This is a "narrow" standard of review as courts defer to the agency's expertise.  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  An agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  Id. (internal citation and quotation marks omitted).  The reviewing court "is not to substitute its judgment for that of the agency," id., and thus "may not supply a reasoned basis for the agency's action that the agency itself has not given."  Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc., 419 U.S. 281, 285–86 (1974).

## III.   Analysis

Defendants argue that neither their decision to designate Rakhimov as a sponsor of Thieves-in-Law nor their provision of redacted material to him violated the APA.  They also assert that Plaintiff cannot bring a due-process claim given his insufficient contacts with the United States.  The Court will take these arguments in reverse order.

A.  <u>Due Process</u>

Before Rakhimov can assert arguments predicated on the Fifth Amendment (or any

constitutional provision), he must establish his entitlement to its protections.  "[N]on-resident

aliens who have insufficient contacts with the United States are not [so] entitled."  <u>Jifry v. FAA</u>,

370 F.3d 1174, 1182 (D.C. Cir. 2004) (citing <u>Johnson v. Eisenstrager</u>, 339 U.S. 763, 771

(1950)); <u>see also</u> <u>People's Mojahedin Org. of Iran v. U.S. Dep't of State</u>, 182 F.3d 17, 22 (D.C.

Cir. 1999) ("A foreign entity without property or presence in this country has no constitutional

rights, under the due process clause or otherwise.").  By contrast, "where aliens have come

within the territory of the United States and established 'substantial connections' with this

country, . . . [they] may be accorded protections under the Constitution."  <u>Jifry</u>, 370 F.3d at

1182–83 (quoting <u>United States v. Verdugo-Urquidez</u>, 494 U.S. 259, 271 (1990)).

As both sides acknowledge, the D.C. Circuit has considered this issue in several foreign-

terrorist-organization-designation cases, but it has not articulated a specific test for determining

whether a foreign national residing outside the United States maintains the requisite "substantial

connections."  <u>Compare</u> <u>Nat'l Council of Resistance of Iran v. U.S. Dep't of State</u>, 251 F.3d 192,

201–03 (D.C. Cir. 2001) (presence within National Press Building in United States and interest

in small bank account qualified as substantial connections), <u>with</u> <u>32 Cty. Sovereignty Comm. v.

U.S. Dep't of State</u>, 292 F.3d 797, 799 (D.C. Cir. 2002) (rental of post-office boxes in United

States and use of bank account to transmit funds and information to Ireland did not qualify); <u>see

also</u> <u>Fares</u>, 901 F.3d at 318 (describing designations under IEEPA as "analogous" to foreign-

terrorist designations under Anti-Terrorism and Effective Death Penalty Act and narcotics-

trafficker designations under Kingpin Act).

Under any conceivable standard, however, Plaintiff here has failed to establish a substantial connection to this country. Indeed, he "has not established <u>any</u> connection to the United States, let alone a substantial one." <u>Fulmen</u>, 2020 WL 1536341, at *5. The Amended Complaint alleges generally that Rakhimov's property and interests in property were "blocked" as a result of his designation. <u>See</u> Am. Compl., ¶ 3. "As a direct legal consequence of OFAC's designation," Rakhimov also remains "barred from the U.S. financial system or from being involved in any transaction dealing with a U.S. nexus." ECF No. 13 (Pl. MSJ) at 32. Describing the legal consequences of any person's addition to the SDN list, however, does not establish <u>Plaintiff's</u> substantial connections to the United States. Were it otherwise, anyone challenging an OFAC designation would enjoy constitutional protections, regardless of the extent of her ties to this country. <u>See People's Mojahedin</u>, 182 F.3d at 22 (stating in foreign-terrorism-organization-designation case that "[n]o one would suppose that a foreign nation had a due process right to notice and a hearing before the Executive imposed an embargo on it for the purpose of coercing a change in policy").

Because Rakhimov's own pleadings and submissions fail to allege the existence of even a single piece of his property in the United States, or his presence here at any moment in time, the Court will grant Defendants' Motion to Dismiss Count II. It does so, however, without prejudice to his ability to bring a due-process claim in the future should he adequately plead a substantial connection.

B.  <u>APA Claims</u>

1.  *Count I*

Count I alleges that Defendants' designation of Rakhimov was arbitrary and capricious in violation of the APA because it lacked sufficient support in the administrative record. <u>See</u> Am.

Compl., ¶¶ 47–50.  Plaintiff argues that "Defendants' determination that Rakhimov provided support and services to the Thieves-in-Law" is only justified by "conclusory statements" in the disclosed evidentiary memorandum and its supporting exhibits.  See Pl. MSJ at 15.  He also criticizes the agency's reliance on open-source media reports and its own press release.  Id. at 3, 17.

Rakhimov's challenge misconstrues the agency's ability to rely on a range of materials — both classified and unclassified — in arriving at its designation decisions.  The D.C. Circuit has made abundantly clear that OFAC can depend on classified materials when adding a person to the SDN list.  See, e.g., Holy Land, 333 F.3d at 164.  Indeed, it is precisely because of the agency's ability to use such materials that "IEEPA . . . authorizes ex parte and in camera review of classified information in 'any judicial review of a determination made under this section [that] was based on classified information.'"  Id.  (alteration in original) (quoting 50 U.S.C. § 1702(c)).  Additionally, the Government is entitled to rely on "unverified open source materials like news media reports," Zevallos, 793 F.3d at 112, and its own "press release" in making and justifying its designation decisions.  Fares v. Smith, 249 F. Supp. 3d 115, 125 (D.D.C. 2017), aff'd, 901 F.3d at 315; see also Holy Land, 333 F.3d at 162 (under IEEPA "it is clear that the government may decide to designate an entity based on a broad range of evidence, including intelligence data and hearsay declarations").

In conducting its review, the Court may therefore consider the entirety of the administrative record.  As mentioned above, it must also apply the APA's "'highly deferential standard,' meaning that [it] may set aside Treasury's action 'only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Zevallos, 793 F.3d at 112 (quoting Islamic Am. Relief Agency v. Gonzales, 477 F.3d 728, 732 (D.C. Cir. 2007)).  The

Court "may not substitute [its] judgment for Treasury's," but must require only that the agency "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id. (alteration omitted) (quoting Islamic Am. Relief Agency, 477 F.3d at 732).  The D.C. Circuit, moreover, has urged courts to be particularly deferential to executive blocking orders, decisions "at the intersection of national security, foreign policy, and administrative law."  Islamic Am. Relief Agency, 477 F.3d at 734; see also Olivares v. TSA, 819 F.3d 454, 462 (D.C. Cir. 2016) ("[W]e defer to the informed judgment of agency officials whose obligation it is to assess risks to national security.").

Having reviewed all the material upon which OFAC relied, the Court concludes that it did not err in designating Rakhimov as a significant sponsor of a transnational criminal organization. First, the agency compiled substantial unclassified evidence supporting its conclusion that he was involved in transnational criminal activities, including drug trafficking and public corruption.  See A. 527–29 (describing role in illegally soliciting Olympic site bid); A. 563–64 (describing arrest for extortion, forgery, and money laundering); A. 495 ("Gafur Rakhimov is involved in narcotics trafficking and mafia activities."); A. 517 (describing Plaintiff as leader of one of three major criminal organizations in Uzbekistan).  Plaintiff's status as a participant in international criminal activities has at least some bearing on a potential relationship with an organization (Thieves-in-Law) that conducts those same activities.

Second, the classified record — reviewed by this Court in camera — contains further evidence connecting Rakhimov's crimes to those of Thieves-in-Law.  He has provided no basis for the Court to disturb that conclusion other than to assert, incorrectly, that the record is insufficient on its face.  See ECF No. 19 (Pl. Reply) at 6 ("[T]his matter involves a challenge to

[Plaintiff's] initial designation, so the administrative record necessarily does not include any exculpatory information provided by Rakhimov.").

Finally, the Court cautions that its decision applies only to the agency's initial designation determination.  Rakhimov remains free to pursue the administrative-reconsideration process.  As Plaintiff concedes, the delisting process supplies a superior avenue for him to provide evidence that would call that designation into question in the first instance.  See Pl. Reply at 6–7; see also Fares, 901 F.3d at 326 (rejecting challenge to initial designation but "recogniz[ing] that this is not plaintiffs' last or only chance to contest their designation").

### 2. *Count III*

Count III asserts that OFAC's provision to Rakhimov of the redacted administrative record violated the APA because it did not contain "sufficient notice."  Am Compl., ¶ 56.  While his due-process claim invoked the identical rationale, he faces no constitutional bar with this count.  Plaintiff's submissions nonetheless provide very little in the way of support for it; neither of the two arguments the Court infers from the relatively thin briefing is persuasive.

First, Rakhimov tries to substantiate Count III by pointing to APA § 706(2)(d).  This provision calls on a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law."  He appears to argue that the agency's redacted record violated OFAC's own procedures provided for by the relevant regulations.  As noted above, these regulations explain that a "request for reconsideration . . . may include arguments or evidence rebutting Treasury's 'basis . . . for the designation,' or 'assert that the circumstances resulting in the designation no longer apply.'"  Zevallos, 793 F.3d at 110 (second omission in original) (quoting 31 C.F.R. § 501.807).  According to Plaintiff, "These procedures clearly presume that designated persons have an

understanding of the reasons for their designation and are placed in a position to offer rebuttal evidence to OFAC . . . ." Pl. MSJ at 33. Put differently, he argues that the regulations cannot be interpreted to grant him a rebuttal opportunity without offering him access to evidence he can rebut.

Even assuming that this attenuated interpretation of the regulations is correct, Rakhimov has been provided with sufficient information regarding the "basis" for his designation such that he may meaningfully participate in the reconsideration process. For instance, the agency has supplied an administrative record full of support for its conclusion that Plaintiff participates in the international drug trade. Presumably, if Rakhimov can demonstrate that he is not an international criminal, it will cast substantial doubt on the agency's conclusion that he collaborated with Thieves-in-Law. See Fares, 249 F. Supp. 3d at 128–29 (rejecting similar argument and stating that "Plaintiffs are said to be directly involved in the management of Panama's largest money laundering organization. That organization is further alleged to have ties with some of the world's largest and most heinous narcotics trafficking organizations . . . . [G]iven the nature of the allegations against them, Plaintiffs are not, in the Court's view, for want of opportunities to present evidence to rebut those allegations."). It is well established, moreover, that the APA does not require OFAC to provide him with the classified or law-enforcement-privileged information supporting his designation. See Sulemane, 2019 WL 77428, at *7.

In addition, OFAC's questionnaires offer further information; indeed Plaintiffs' submissions acknowledge that they provide meaningful details regarding the evidence against him. See, e.g., Compl., ¶¶ 27–28 ("Rakhimov explained [in response to OFAC's questionnaire] that he had not interacted with any persons OFAC had inquired about that are allegedly

connected to The Brother's Circle and/or Thieves-in-Law for a considerable amount of years, with the exception of Sergey Moskalenko . . . and their relationship was limited to a personal friendship.") (emphasis added).  As the agency explains, "Rakhimov could," and in fact already has, "submit[ted] information related to whether he knows or associates with any members of Thieves-in-Law, or whether he has ever knowingly collaborated with a member of Thieves-in-Law, including with respect to business matters."  ECF No. 16 (Def. Reply) at 25.  "Or he can explain that any association with Thieves-in-Law has ceased."  Id.; see also 31 C.F.R. § 501.807 (SDN seeking delisting may "assert that the circumstances resulting in the designation no longer apply").

Plaintiff next invokes the APA's notice requirement, codified at 5 U.S.C. § 555(e), which requires an agency to provide "a brief statement of the grounds for denial" whenever it "den[ies] in whole or in part . . . a written application, petition or other request of an interested person made in connection with any agency proceeding."  Roelofs v. Sec'y of the Air Force, 628 F.2d 594, 600 (D.C. Cir. 1980); see also Butte County v. Hogen, 613 F.3d 190, 194 (D.C. Cir. 2010) (describing "brief statement" requirement of § 555(e) as "minimal").  Defendants' decision to designate Plaintiff, however, was not made in response to any "application, petition, or request" and therefore could not violate this provision.  In other words, the agency has not yet had the opportunity to submit a "brief statement of the grounds for denial," 5 U.S.C § 555(e), because it has not denied his delisting request (which is currently stayed).

As explained above, the agency has provided Rakhimov with a sufficient basis for understanding his initial designation.  Down the road, Defendants could run afoul of § 555(e), but the Court cannot assess their hypothetical response to Plaintiff's delisting request at this juncture.  See, e.g., Sulemane, 2019 WL 77428, at *7 ("OFAC provided [the plaintiff] much

more than the 'brief statement' of its grounds that the statute requires.  OFAC's denial of [the plaintiff['s] request for reconsideration was communicated to him in a detailed, three-page letter.").

Rakhimov understandably remains frustrated by the amount of redacted information in the administrative record, but the APA does not entitle him to more at this juncture.  The Court therefore need not consider Plaintiff's alternative request that it impose the unprecedented remedy of mandating the issuance of an unclassified summary or allowing his counsel access to classified material.  See Al Haramain Islamic Found., 686 F.3d at 983 ("[A]n unclassified summary may not be possible because, in some cases, the subject matter itself may be classified and cannot be revealed without implicating national security."); Holy Land, 333 F.3d at 164 (OFAC designation process does not convey a right to access classified evidence, confront and cross-examine witnesses, or obtain procedures approximating a judicial trial).  It will instead allow the reconsideration process to unfold.  Again, if Plaintiff believes that OFAC's decision on his delisting petition is incorrect or insufficiently justified, he may challenge that decision when it is issued.

## IV.     Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment, and it will deny Plaintiff's Motion for Summary Judgment, although Count II will be dismissed without prejudice.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  April 20, 2020